**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRIAN R. VAUGHAN and JASON DARNELL, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No.: 20-cv-04241 |
| v. | Hon. Marvin E. Aspen |
| BIOMAT USA, INC., TALECRIS PLASMA RESOURCES, INC., and INTERSTATE BLOOD BANK, INC., | Mag. Judge Jeffrey Cole |
| *Defendants*. | |

### AMENDED CLASS ACTION COMPLAINT

Plaintiffs Brian Vaughan and Jason Darnell (collectively "Plaintiffs") bring this Amended Class Action Complaint individually and on behalf of all others similarly situated against Defendants Biomat USA, Inc., ("Biomat"), Talecris Plasma Resources, Inc. ("Talecris"), and Interstate Blood Bank, Inc. ("Interstate Blood Bank") (collectively "Defendants") to stop Defendants' unlawful collection, use, and storage of Plaintiffs' and the proposed Class's sensitive, private, and personal biometric data. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by their attorneys. Further, Plaintiffs allege as follows:

### PARTIES

1. Plaintiffs are individual citizens of the State of Illinois.

2. Plaintiffs donated plasma at one of Defendants' Illinois-based plasma donation centers.

3.      Defendants Biomat and Talecris are Delaware corporations with multiple business locations in Illinois where they contract with people to purchase their plasma.

4.      Defendant Interstate Blood Bank is a Tennessee corporation with multiple business locations in Illinois where it contracts with people to purchase their plasma. Interstate Blook Bank also operates under the name Plasma Biological Services, LLC ("PBS"). PBS merged into Interstate Blood Bank in 2019.

5.      Defendants are part of the Grifols network of blood plasma donation. Grifols also operates in Illinois under the names of the Defendants.

## JURISDICTION AND VENUE

6.      This Court has personal jurisdiction over Defendants because Defendants conducted business and scanned, collected, possessed, or otherwise obtained Plaintiffs' fingerprint data in Illinois.

7.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiffs and Defendants are citizens of different states and there is over $5,000,000 is in controversy.

8.      Venue is proper in the Northern District of Illinois pursuant to 29 U.S.C. § 1391(a)(2) because the events giving rise to this action took place here.

### INTRODUCTION

9.      While most establishments use conventional means for tracking clients, Defendants require that plasma donors--like Plaintiffs--use biometric data when providing plasma to the Defendants.

10.     This exposes Defendants' donors, including Plaintiffs, to serious and irreversible privacy risks.

11.    For example, if a biometric database is hacked, breached, or otherwise exposed –
such as in the recent Equifax data breach – donors have __*no*__ means by which to prevent identity
theft, unauthorized tracking, and other improper or unlawful use of this information.

12.    In 2015, a data breach at the United States Office of Personnel Management
exposed the personal identification information, including biometric data, of over 21.5 million
federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity
Incidents* (2018), available at www.opm.gov/cybersecurity/cybersecurity-incidents.

13.    An illegal market already exists for biometric data. Hackers and identity thieves
have targeted Aadhaar, the largest biometric database in the world, which contains the personal
and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion
Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at
Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), available at
https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-
inindiahas-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

14.    In January 2018, an Indian newspaper reported that the information housed in
Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira,
*Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan.
4, 2018), available at http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-
haveaccessto-billion-aadhaar-details/523361.html.

15.    As a donor of Defendants, Plaintiffs was identified using a biometric finger scan to
donate plasma.

16.    The Illinois Biometric Information Privacy Act (hereinafter "BIPA" or the "Act")
expressly obligates Defendants to obtain an executed, written release from an individual, as a

condition of employment, in order to capture, collect, and store an individual's biometric identifiers or biometric information, especially a fingerprint or hand geometry scan, and biometric information derived from it.

17.    BIPA further obligates Defendants to inform their donors in writing that a biometric identifier or biometric information is being collected or captured; to tell their donors in writing for how long they will store their biometric data or information and any purposes for which biometric information is being captured, collected, and used; and to make available a written policy disclosing when it will permanently destroy such information.

18.    BIPA makes all of these requirements a *precondition* to the collection or recording of fingerprints, hand geometry scans, or other associated biometric information – under the Act, no biometric identifiers or biometric information may be captured, collected, purchased, or otherwise obtained if these pre-capture, pre-collection, pre-storage, or pre-obtainment requirements are not met.

19.    There is no realistic way, absent surgery, to reassign someone's biometric data. A person can obtain a new social security number, but not a new hand, which makes the protection of, and control over, biometric identifiers and biometric information particularly.

20.    Defendants captured, collected, received through trade, and/or otherwise obtained and biometric identifiers or biometric information of their Illinois donors, like Plaintiffs, without properly obtaining the above-described written executed release, and without making the required disclosures concerning the collection, storage, use, or destruction of biometric identifiers or information.

21.    Upon information and belief, Defendants lack retention schedules and guidelines for permanently destroying Plaintiffs' and the Class's biometric data.

22.     Plaintiffs and the putative Class are aggrieved by Defendants' failure to destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of their last interactions with the company.

23.     Plaintiffs seek damages and injunctive relief for Defendants' BIPA violations, for themselves and all those similarly situated.

### PLAINTIFFS' SPECIFIC ALLEGATIONS

24.      Plaintiffs donated plasma at one of the Defendants' Illinois-based plasma donation centers within this District.

25.     As a plasma donor, Plaintiffs were required to scan at least one fingerprint so Defendants could create, collect, capture, construct, store, use, and/or obtain a biometric template for them.

26.     Defendants then used Plaintiffs' biometrics as an identification and authentication method to track their plasma donations and identity.

27.     Defendants subsequently stored Plaintiffs' biometric data in their database(s).

28.     Each time that Plaintiffs donated plasma they were required to scan their fingerprint using the biometric device.

29.     Plaintiffs were not informed of the specific limited purposes or length of time for which Defendants collected, stored, or used their biometrics.

30.     Plaintiffs were never informed of any biometric data retention policy developed by Defendant, nor was he ever been informed of whether Defendants will ever permanently delete their biometrics.

31.     Plaintiffs were never provided with nor ever signed a written release allowing Defendants to collect, capture, store, or otherwise obtain their fingerprint print(s), handprint, hand geometry, or other biometrics.

32.     Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' violations of BIPA alleged herein.

33.     BIPA protects donors like Plaintiffs putative Class from this precise conduct, and Defendants had no right to secure this data without complying with BIPA.

34.     Through BIPA, the Illinois legislature has created a right – a right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data – and an injury – not receiving this extremely critical information.

### ILLINOIS' STRONG STANCE ON PROTECTION OF BIOMETRIC INFORMATION

35.     BIPA provides valuable privacy rights, protections, and benefits to plasma donors in Illinois.

36.     For example, BIPA's requirements ensure that the environment for taking of biometrics is not forced or coerced; that individuals are freely advised that, by scanning one's fingerprint and/or finger geometry, the employer or plasma company is capturing, extracting, creating, and recording biometrics; that individuals can keep tabs on their biometric roadmaps (*e.g.,* who has their biometrics, for long how, and how it is being used). The BIPA-required environment for the taking of biometrics provides legislatively-imposed peace for biometric subjects.

37.     To this end, in passing the Biometric Information Privacy Act (hereinafter "the Act"), the Illinois General Assembly found:

(a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.

(b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.

(c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

(d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.

(e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.

(f) The full ramifications of biometric technology are not fully known.

(g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

See, 740 ILCS 14/5, Legislative findings; intent.

38.     The law is specifically designed to require a company that collects biometrics to do several things, *before collection,* aimed, in part, at educating and protecting the person whose biometrics it is taking for its own use, and requiring signed, written consent attesting that the individual has been properly informed and has freely consented to biometrics collection.

39.     The Act defines "Biometric identifier" as:

a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or

serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

See, 740 ILCS 14/10.

40.    The Act defines "Biometric information" as:

any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

See, 740 ILCS 14/10.

41.    The Act defines "Confidential and sensitive information" as:

personal information that can be used to uniquely identify an individual or an individual's account or property. Examples of confidential and sensitive information include, but are not limited to, a genetic marker, genetic testing information, a unique identifier number to locate an account or property, an account number, a PIN number, a pass code, a driver's license number, or a social security number.

See, 740 ILCS 14/10.

42.    The Act defines "Private entity" as:

any individual, partnership, corporation, limited liability company, association, or other group, however organized. A private entity does not include a State or local government agency. A private entity does not include any court of Illinois, a clerk of the court, or a judge or justice thereof.

See, 740 ILCS 14/10.

43.    The Act defines "Written release" as:

informed written consent or, in the context of employment, a release executed by an employee as a condition of employment

See, 740 ILCS 14/10.

44.    The Act requires:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS 14/15(a).

45.    Additionally, the Act provides:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

46.    BIPA provides statutory damages negligent and reckless or willful violations.

47.    The Act explicitly provides a private right of action for violations of the Act, and

provides that a prevailing party "may recover for each violation:"

(1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;

(2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;

(3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and

(4) other relief, including an injunction, as the State or federal court may deem appropriate.

740 ILCS 14/20.

48.     In enacting BIPA, the Illinois General Assembly explicitly singled out and bound employers to BIPA's requirements. 740 ILCS § 14/10 (defining "Written release" in the context of employment); 740 ILCS § 14/15(b)(3).

49.     In fact, BIPA requires express written consent to capture or collect biometrics in the first place.

50.     Defendants violated these clear protections of the Act; Defendants violated, and upon information and belief, continue to violate their donors' biometric privacy rights.

### DEFENDANTS' BIOMETRIC FINGER-SCANNING OF DONORS

51.     At relevant times, Defendants have taken the rather invasive and coercive step of requiring plasma donors to be fingerprint scanned, and then using biometric information captured from those fingerprint scans, and data derived therefrom, to identify the donors.

52.     Defendants have a practice of using biometric devices to track their donors, albeit without regard to Illinois' requirements under BIPA.

53.     Defendants caused biometrics from finger scans to be recorded, collected, captured, and stored at relevant times.

54.     Defendants has not, on information and belief, properly informed donors in writing that a biometric identifier or biometric information is being captured, obtained, collected or stored; informed donors in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; obtained donors' proper written consent to the capture, collection, obtainment or storage of their biometric identifier and

biometric information derived from it; or obtained written consent.

55.     Defendants did not at any time, on information and belief as part of their donation of plasma: inform Plaintiffs in writing (or otherwise) that a biometric identifier and biometric information was being obtained, captured, collected, and/or stored, or of the specific purposes and length of term for which a biometric identifier or biometric information was being collected, captured, stored, and/or used; obtain, or attempt to obtain, Plaintiffs' executed written release to have Plaintiffs' biometrics captured, collected, stored, or recorded as a condition of donation – Plaintiffs did not provide consent required by BIPA to the capture, collection, storage, obtainment, and/or use of Plaintiffs' fingerprint, finger scan, finger geometry, or associated biometrics. Nor did Plaintiffs know or fully understand that Defendants was collecting, capturing, and/or storing biometrics when Plaintiffs were scanning Plaintiffs; fingers; nor did Plaintiffs know or could Plaintiffs know all of the uses or purposes for which Plaintiffs' biometrics were taken.

56.     Upon information and belief, Defendants have not publicly disclosed their retention schedule and guidelines for permanently destroying donor biometrics.

57.     Defendants, on information and belief, do not have and never followed a written policy, made available to the public, that discloses the retention schedule and/or guidelines for retaining and then permanently destroying biometric identifiers and information of donors.

58.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Defendants' – where individuals are aware that they are providing a biometric but not aware of to whom or for what purposes they are doing so – is dangerous.

59.     That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers or information such as

a finger scan, and/or data derived therefrom, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long.

60.     Thus, BIPA is the Illinois Legislature's expression that Illinois citizens have biometric privacy rights, as created by BIPA.

61.     Defendants disregarded these obligations and instead unlawfully collected, stored, and used donors' biometric identifiers and information, without ever receiving the individual's informed written consent as required by BIPA.

62.     Because Defendants neither published a BIPA-mandated data retention policy nor disclosed the purposes for their collection of biometric data, Defendants' donors have no idea whether Defendants sells, discloses, re-discloses, or otherwise disseminates their biometric data.

63.     Nor are Plaintiffs and the putative Class told to whom Defendants currently discloses their biometric data, or what might happen to their biometric data in the event of a buyout, merger, or a bankruptcy.

64.     By and through the actions detailed above, Defendants have not only disregard the Class' privacy rights, but they have also violated BIPA.

65.     Defendants' above-described use of biometrics benefits only Defendants. There is no corresponding benefit to donors; they are forced to use biometrics to donate plasma.

### CLASS ALLEGATIONS

66.     Plaintiffs bring this action on behalf of themselves and on behalf of the following class:

> All persons who were enrolled in the biometric system used by Defendants in Illinois for plasma donors while donating plasma to Defendants from five years preceding the filing of this action to the date a class notice is mailed in this action.

Excluded from the class are Defendants' officers and directors, Plaintiffs' counsel, and any member of the judiciary presiding over this action.

67.     Plaintiffs and the Class are similar to one another because they were all subject to the same allegedly illegal practices: scanning their fingerprints in Defendants' verification system despite Defendants failing to adhere to the requirements of the Biometric Information Privacy Act.

68.     The Class includes more than 100 members. *See* ECF No. 1, Notice of Removal, ¶ 10.

69.     As a result, the Class is so numerous that joining of all class members in one lawsuit is not practical.

70.     The issues involved in this lawsuit present common questions of law and fact, including: whether Defendants required the Class to use their fingerprints; whether Defendants collected the Class's biometric identifiers or information; and whether Defendants complied with the procedures in 740 ILCS 14/15(a) and (b) of the Biometric Information Privacy Act.

71.     These common questions of law and fact predominate over the variations that may exist between members of the Class, if any.

72.     Plaintiffs, the members of the Class, and Defendants have a commonality of interest in the subject matter of the lawsuit and the remedy sought.

73.     If individual actions were required to be brought by each member of the Class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Class, to the Court, and to Defendants.

74.     Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Class is entitled.

75.     The books and records of Defendants are material to Plaintiffs' case as they disclose how and when Plaintiffs and the Class scanned their fingerprints in Defendants' verification system and what information Defendants provided Plaintiffs and the Class about the collection,

retention, use, and possession of their biometric identifiers and information.

76.    Plaintiffs and counsel will fairly and adequately protect the interests of the Class.

77.    Plaintiffs retained counsel experienced in complex class action litigation.

**COUNT I – FOR DAMAGES AGAINST DEFENDANTS**
**VIOLATION OF 740 ILCS 14/1, *ET SEQ.* – THE BIOMETRIC INFORMATION PRIVACY ACT**
**INDIVIDUALLY AND ON BEHALF OF THE CLASS**

78.    Plaintiffs, individually and on behalf of all others similarly situated, repeats, re-alleges, and incorporates all preceding paragraphs as if fully set forth herein.

79.    BIPA is a remedial statute designed to protect consumers, by requiring consent and disclosures associated with the handling of biometrics, particularly in the context of biometric technology. 740 ILCS 14/5(g), 14/10, and 14/15(b)(3).

80.    The Illinois General Assembly's recognition of the importance of the public policy and benefits underpinning BIPA's enactment, and the regulation of biometrics collection, is detailed in the text of the statute itself.

81.    Further, the Illinois Supreme Court, in a unanimous decision made clear that "**Compliance should not be difficult.**" *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 37 (Jan. 25, 2019).

82.    Additionally, the Illinois Supreme Court has made clear that the Illinois Legislature intended to "subject[] private entities who fail to follow the statute's requirements to **substantial potential liability**, including liquidated damages, injunctions, attorney fees, and litigation expenses **'for each violation' of the law** (*id.* § 20) whether or not actual damages, beyond violation of the law's provisions, can be shown. *Id*. at ¶ 36 (emphasis added).

83.    "It is clear that the legislature intended for this provision to have substantial force." *Id*. at ¶ 37.

84. Further, the Illinois Supreme Court has made clear, "**an individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an 'aggrieved' person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act.**" *Id*. at ¶ 40 (emphasis added).

85. As Plaintiffs are not required to allege or prove actual damages in order to state a claim under BIPA, they seek statutory damages under BIPA as compensation from Defendants as authorized by BIPA. *Id*.

86. Defendants have been and continue to be each a "private entity."

87. Defendants have been and continue to be in possession of Plaintiffs' biometrics, and it collected, captured, or otherwise obtained their biometric identifiers and biometric information within the meaning of the Act.

88. As more fully set forth above, at relevant times Defendants collected, captured, or otherwise obtained, Plaintiffs' biometric identifiers and biometric information based on those identifiers as defined by BIPA, 740 ILCS 14/10, through the imposition of biometric devices.

89. In violation of 740 ILCS 14/15(a), Defendants failed to make such a written policy publicly available to Plaintiffs and other class members.

90. In violation of 740 ILCS 14/15(b), Defendants have collected, captured, stored, and/or otherwise obtained Plaintiffs' and other class members' biometric identifiers and biometric information, without:

    a. informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, that the biometric identifiers or biometric information were being obtained, collected, captured, and/or stored;

    b. informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, of the specific purpose and length of

term for which the biometric identifiers or biometric information were being collected, stored, and used; and

c. receiving a written release executed by Plaintiffs and/or Class members and executed by Plaintiffs and/or Class members as a condition of employment or donation.

91.     Defendants took Plaintiffs' and other class members' finger scans, and knowingly caused their biometrics to be captured, collected, stored, and/or otherwise obtained without making publicly available the required policy that explains, for example, any purposes for which the biometric identifiers and information were collected, a retention schedule, and guidelines for permanently destroying biometric identifiers and information.

92.     As a result of Defendants' above- described acts and omissions, Defendants have invaded the privacy of Plaintiffs and the Class; it has unlawfully and coercively taken their biometrics; it has failed to provide them with information required by BIPA; it has deprived them of benefits, rights, opportunities and decisions conferred and required by the Illinois legislature via BIPA; and it illegally captured, collected, recorded, possessed, converted, and/or stored their finger scans, biometrics, and property.

93.     Accordingly, Defendants have violated the BIPA, and Plaintiffs and the Class have been damaged and are entitled to damages available under the BIPA, including liquidated damages of $1,000 per negligent violation and/or $5,000 per willful or reckless violation. 740 ILCS 14/20(1).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class of similarly situated individuals, prays for an Order as follows:

A. Finding this action satisfies the prerequisites for maintenance as a class action set forth in the Federal Rules of Civil Procedure and certifying the class as defined herein;

B. Designating and appointing Plaintiffs as representative of the class and Plaintiffs' undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiffs and the Class and against Defendants;

D. Awarding Plaintiffs and the Class members liquidated damages of $1,000 per *each* negligent violation, $5,000 per *each* willful or reckless violation of BIPA;

E. Awarding Plaintiffs and the Class members reasonable attorneys' fees and costs incurred in this litigation; and

F. Granting all such other and further relief as the Court deems just and appropriate.

### COUNT II – FOR INJUNCTIVE RELIEF AGAINST DEFENDANTS
### VIOLATION OF 740 ILCS 14/1, *ET SEQ*. – THE BIOMETRIC INFORMATION PRIVACY ACT

94. Plaintiffs, individually and on behalf of all others similarly situated, repeats, re-alleges, and incorporates all preceding paragraphs as if fully set forth herein.

95. BIPA provides for injunctive relief. 740 ILCS 14/20(4).

96. Plaintiffs and other Class members are entitled to an order requiring Defendants to make disclosures consistent with the Act and enjoining further unlawful conduct.

97. First, Plaintiffs seek an order requiring Defendants to publicly disclose a written policy establishing any specific purpose and length of term for which Plaintiffs and other donors' biometrics have been collected, captured, stored, obtained, and/or used, as well as guidelines for permanently destroying such biometrics when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first, as required by 740 ILCS 14/15(a).

98.     Second, Plaintiffs seek an order requiring Defendants to disclose whether Defendants have retained Plaintiffs' and other donor's biometrics in any fashion, and if, when, and how such biometrics were permanently destroyed, consistent with BIPA.

99.     Third, Defendants should be enjoined from further BIPA non-compliance and should be ordered to remedy any BIPA compliance deficiencies forthwith.

100.    Plaintiffs' and other Class members' legal interests are adverse to Defendants' legal interests. There is a substantial controversy between Plaintiffs and Class members and Defendants warranting equitable relief so that Plaintiffs and the Class may obtain the protections that BIPA entitles them to receive.

101.    Plaintiffs and the Class do not know what Defendants have done (or intend to do) with their biometrics. Absent injunctive relief, Defendants are likely to continue their BIPA non-compliance and Plaintiffs and other Class members will continue to be in the dark on the subject.

102.    For the reasons set forth above, Plaintiffs are likely to succeed on the merits of their claims.

103.    BIPA establishes the importance, value, and sensitive nature of biometrics, along with the need to protect and control it; Plaintiffs are entitled to know what Defendants has done with it as set forth above, and to an affirmation and verification that it has been or will be permanently destroyed as required by 740 ILCS 14/15(a).

104.    The gravity of the harm to Plaintiffs and the Class, absent equitable relief, outweighs any harm to Defendants if such relief is granted.

105.     As a result, Plaintiffs requests commensurate injunctive relief.

WHEREFORE, Plaintiffs, individually and on behalf of the classes they represent, pray for an Order as follows:

A.    Finding this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the class defined herein;

B.    Designating and appointing Plaintiffs as representative of the class they represent and Plaintiffs' undersigned counsel as class counsel;

C.    Entering judgment in favor of Plaintiffs and the classes and against Defendants;

D.    Awarding Plaintiffs and the class members all damages available to Plaintiffs and the class available under applicable law, including statutory or liquidated damages;

E.    Providing commensurate injunctive relief for Plaintiffs and class members as set forth above;

F.    Awarding Plaintiffs and the Class members reasonable attorneys' fees and costs incurred in this litigation; and

G.    Granting all such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

Dated: April 8, 2021                    By: */s/ Mara Baltabols*

David Fish
dfish@fishlawfirm.com
mara@fishlawfirm.com
docketing@fishlawfirm.com
THE FISH LAW FIRM, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
Tel: 630.355.7590
Fax: 630.778.0400
Firm ID: 44086

COUNSEL FOR THE PLAINTIFFS AND THE PUTATIVE CLASS