**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRIAN R. VAUGHAN, JASON DARNELL, FEBBIE MINNIEFIELD, and ADRIEL VEGA, individually and on behalf of all others similarly situated,<br><br>      *Plaintiffs*,<br><br>   v.<br><br>BIOMAT USA, INC., TALECRIS PLASMA RESOURCES, INC., and INTERSTATE BLOOD BANK, INC.,<br><br>      *Defendants*. | Case No.: 20-cv-04241<br><br>Hon. Marvin E. Aspen<br><br>Mag. Judge Jeffrey Cole |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Brian Vaughan, Jason Darnell, Febbie Minniefield, and Adriel Vega (collectively "Plaintiffs") bring this Second Amended Class Action Complaint individually and on behalf of all others similarly situated against Defendants Biomat USA, Inc. ("Biomat"), Talecris Plasma Resources, Inc. ("Talecris"), and Interstate Blood Bank, Inc. ("IBBI") (collectively "Defendants") to stop to Defendants' unlawful collection, use, and storage of Plaintiffs' and the proposed Class's sensitive, private, and personal biometric data. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by their attorneys.

## PARTIES

1.  Plaintiffs are individual citizens of the State of Illinois.

2.  Plaintiffs sold plasma at one of Defendants' Illinois-based plasma donation centers.

3.  Biomat, Talecris, and IBB are all part of the Grifols, S.A. network of blood plasma donation centers. Grifols, S.A. ("Grifols") is a Spanish multinational pharmaceutical and chemical manufacturer.

4.     Grifols utilizes the Defendants in this case to source plasma, primarily from low-income individuals, to use in its manufacturing operations.

5.     Defendant Biomat is a Delaware corporation with multiple business locations in Illinois where it contracts with people to purchase their plasma. Biomat owns and operates locations in Chicago, Maywood, and Carbondale Illinois. Plaintiff Minniefield scanned her fingerprint at Biomat in Maywood including in 2020.

6.     Biomat also operates under the name "Plasmacare" with a location in Chicago, Illinois. Plaintiff Vaughan scanned his fingerprint at the Biomat "Plasmacare" location in Chicago including during approximately 2017 through 2019.[1]

7.     Defendant Talecris is a Delaware corporation with multiple business locations in Illinois where it contracts with people to purchase their plasma. Talecris owns and operates locations in Champaign, Bloomington, Rockford, Waukegan, and Peoria, Illinois. Plaintiff Vega scanned her fingerprint at Talecris in Bloomington including during approximately 2019 through 2021.

8.     Defendant IBB is a Tennessee corporation with multiple business locations in Illinois where it contracts with people to purchase their plasma. IBB also operates under the name Plasma Biological Services, LLC ("PBS"). PBS merged into Interstate Blood Bank in 2019. IBB owns and operates locations in Chicago and Elgin, Illinois. Plaintiff Darnell scanned his fingerprint at IBB in Elgin including from approximately 2016 through 2018.

9.     Defendants are joined together in the same class action because they are all part of the Grifols network of plasma donation centers and are subsidiaries of Grifols, a Spanish Company

---

[1] Plasmacare, Inc. merged with Biomat USA in 2015. *See* GRIFOLS SEC ANNUAL REPORT 2016, *available at* https://www.sec.gov/Archives/edgar/data/1438569/000110465917021206/a17-8984_120f.htm (last visited May 13, 2022).

that operates in the United States through the Defendants. They are also all advertised as Grifols Plasma Donation Centers. *See* GRIFOLS PLASMA LOCATIONS, *available at* https://www.grifolsplasma.com/en/locations/find-a-donation-center (last visited May 13, 2022).

10. According to Grifols' Annual Report, (1) Biomat is Grifols "American subsidiary" and Grifols owns 100% of the shares of Biomat; (2) Grifols acquired Talecris in 2011 and owns 100% of the shares; (3) Grifols acquired IBB in 2016 and owns 100% of the shares. *See* AUDITOR'S REPORT ON GRIFOLS, S.A. AND SUBSIDIARIES, *available at* 318a4db9-4b6a-3755-8ddf-6d0750325d39 (grifols.com) (last visited May 13, 2022).

11. Defendants jointly market their plasma purchasing facilities to consumers, like the Plaintiffs, and utilize virtually the same biometric collecting kiosks to extract biometric information.

## JURISDICTION AND VENUE

12. This Court has personal jurisdiction over Defendants because Defendants conducted business and scanned, collected, possessed, or otherwise obtained Plaintiffs' fingerprint data in Illinois.

13. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiffs and Defendants are citizens of different states and there is over $5,000,000 is in controversy.

14. Venue is proper in the Northern District of Illinois pursuant to 29 U.S.C. § 1391(a)(2) because the events giving rise to this action took place here.

## INTRODUCTION

15. While most establishments use conventional means for tracking clients, Defendants require that plasma sellers—like Plaintiffs—use biometric data when selling plasma.

16.     This exposes Defendants' donors, including Plaintiffs, to serious and irreversible privacy risks. For example, if a biometric database is hacked, breached, or otherwise exposed – such as in the recent Equifax data breach – donors have **_no_** means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this information.

17.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), available at www.opm.gov/cybersecurity/cybersecurity-incidents.

18.     An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), available at https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-inindiahas-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

19.     In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), available at http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-haveaccessto-billion-aadhaar-details/523361.html.

20.     As a plasma seller to one of the Defendants, each Plaintiff was identified using a biometric finger scan to sell plasma.

21.     The Illinois Biometric Information Privacy Act (hereinafter "BIPA" or the "Act") expressly obligates Defendants to obtain an executed, written release from an individual, as a condition of employment, in order to capture, collect, and store an individual's biometric identifiers or biometric information, especially a fingerprint or hand geometry scan, and biometric information derived from it.

22.     BIPA further obligates Defendants to inform their plasma sellers in writing that a biometric identifier or biometric information is being collected or captured; to tell them in writing for how long they will store their biometric data or information and any purposes for which biometric information is being captured, collected, and used; and to make available a written policy disclosing when it will permanently destroy such information.

23.     BIPA makes all of these requirements a *precondition* to the collection or recording of fingerprints, hand geometry scans, or other associated biometric information – under the Act, no biometric identifiers or biometric information may be captured, collected, purchased, or otherwise obtained if these pre-capture, pre-collection, pre-storage, or pre-obtainment requirements are not met.

24.     There is no realistic way, absent surgery, to reassign someone's biometric data. A person can obtain a new social security number, but not a new hand with an authentic fingerprint, which makes the protection of, and control over, biometric identifiers and biometric information particularly.

25.     Defendants captured, collected, received through trade, and/or otherwise obtained and biometric identifiers or biometric information of their Illinois plasma purchasers, like Plaintiffs, without properly obtaining the above-described written executed release, and without

making the required disclosures concerning the collection, storage, use, or destruction of biometric identifiers or information.

26.     Upon information and belief, Defendants lack retention schedules and guidelines for permanently destroying Plaintiffs' and the Class's biometric data.

27.     Plaintiffs and the putative Class are aggrieved by Defendants' failure to destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of their last interactions with the company.

28.     Plaintiffs seek damages and injunctive relief for Defendants' BIPA violations, for themselves and all those similarly situated.

### PLAINTIFFS' SPECIFIC ALLEGATIONS

29.     Plaintiff Minniefield sold plasma at "Biomat USA, Inc." located at 215 Madison St., Maywood, IL 60153 in approximately 2020. Each time she sold her plasma she was required to scan her fingerprint into a kiosk.

30.     Plaintiff Vaughan sold plasma at "Plasmacare, Inc.," a Biomat location, at 3280 W. 87th St., Chicago, IL 60652. Each time Plaintiff Vaughan sold plasma, he was required to scan his fingerprint into a kiosk. Plaintiff Vaughan also worked as a plasma processor at the same location and scanned his fingerprint on a time management system to track time worked.

31.     Plaintiff Vega sold plasma at "Talecris Plasma Resources, Inc." located at 511 W. Washington St., Bloomington, IL 61701 at various times between 2019 and 2021. Each time Plaintiff Vega sold plasma, she was required to scan her finger into a kiosk.

32.     Plaintiff Darnell sold plasma at "Interstate Blood Bank, Inc." located at 116 N. McLean Blvd., Elgin, IL at various times between 2016 and 2018. Each time Plaintiff Darnell sold plasma, he was required to scan his finger into a kiosk.

33.     As plasma sellers, Plaintiffs were required to scan at least one fingerprint so Defendants could create, collect, capture, construct, store, use, and/or obtain a biometric template for them.

34.     Defendants then used Plaintiffs' biometrics as an identification and authentication method to track their identity.

35.     Defendants subsequently stored Plaintiffs' biometric data in their respective database(s).

36.     Each time that Plaintiffs sold plasma they were required to scan their fingerprint using the Defendants' biometric devices.

37.     Plaintiffs were not informed of the specific limited purposes or length of time for which Defendants collected, stored, or used their biometrics.

38.     Plaintiffs were never informed of any biometric data retention policy developed by Defendants, nor were they ever informed of whether Defendants will permanently delete their biometrics.

39.     Plaintiffs were never provided with nor ever signed a written release allowing Defendants to collect, capture, store, or otherwise obtain their fingerprint, handprint, hand geometry, or other biometrics.

40.     Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' violations of BIPA alleged herein.

41.     BIPA protects donors like Plaintiffs putative Class from this precise conduct, and Defendants had no right to secure this data without complying with BIPA.

42.     Through BIPA, the Illinois legislature has created a right – a right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data – and an injury – not receiving this extremely critical information.

**ILLINOIS' STRONG STANCE ON PROTECTION OF BIOMETRIC INFORMATION**

43.     BIPA provides valuable privacy rights, protections, and benefits to plasma donors in Illinois.

44.     For example, BIPA's requirements ensure that the environment for taking of biometrics is not forced or coerced; that individuals are freely advised that, by scanning one's fingerprint and/or finger geometry, the employer or plasma company is capturing, extracting, creating, and recording biometrics; that individuals can keep tabs on their biometric roadmaps (*e.g.,* who has their biometrics, for long how, and how it is being used). The BIPA-required environment for the taking of biometrics provides legislatively-imposed peace for biometric subjects.

45.     To this end, in passing the Biometric Information Privacy Act (hereinafter "the Act"), the Illinois General Assembly found:

(a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.

(b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.

(c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

(d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.

(e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.

(f) The full ramifications of biometric technology are not fully known.

(g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

See, 740 ILCS 14/5, Legislative findings; intent.

46. The law is specifically designed to require a company that collects biometrics to do several things, *before collection,* aimed, in part, at educating and protecting the person whose biometrics it is taking for its own use, and requiring signed, written consent attesting that the individual has been properly informed and has freely consented to biometrics collection.

47. Defendants violated these clear protections of the Act; Defendants violated, and upon information and belief, continue to violate their plasma seller's biometric privacy rights.

**DEFENDANTS' BIOMETRIC FINGER-SCANNING OF PLASMA SELLERS**

48. At relevant times, Defendants have taken the rather invasive and coercive step of requiring plasma sellers to be fingerprint scanned, and then using biometric information captured from those fingerprint scans, and data derived therefrom, to identify the donors.

49. Defendants have a practice of using biometric devices to track their donors, albeit without regard to Illinois' requirements under BIPA.

50. Defendants caused biometrics from finger scans to be recorded, collected, captured, and stored at relevant times.

51. Defendants has not properly informed donors in writing that a biometric identifier or biometric information is being captured, obtained, collected or stored; informed donors in

writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; obtained donors' proper written consent to the capture, collection, obtainment or storage of their biometric identifier and biometric information derived from it; or obtained written consent.

52.     Defendants did not at any time as part of their purchase of plasma: inform Plaintiffs in writing (or otherwise) that a biometric identifier and biometric information was being obtained, captured, collected, and/or stored, or of the specific purposes and length of term for which a biometric identifier or biometric information was being collected, captured, stored, and/or used; obtain, or attempt to obtain, Plaintiffs' executed written release to have Plaintiffs' biometrics captured, collected, stored, or recorded as a condition of donation – Plaintiffs did not provide consent required by BIPA to the capture, collection, storage, obtainment, and/or use of Plaintiffs' fingerprint, finger scan, finger geometry, or associated biometrics. Nor did Plaintiffs know or fully understand that Defendants was collecting, capturing, and/or storing biometrics when Plaintiffs were scanning Plaintiffs; fingers; nor did Plaintiffs know or could Plaintiffs know all of the uses or purposes for which Plaintiffs' biometrics were taken.

53.     Defendants have not publicly disclosed their retention schedule and guidelines for permanently destroying donor biometrics.

54.     Defendants, on information and belief, do not have and never followed a written policy, made available to the public, that discloses the retention schedule and/or guidelines for retaining and then permanently destroying biometric identifiers and information of donors.

55.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA highlights why conduct such as Defendants' – where individuals are aware that they are providing a biometric but not aware of to whom or for what purposes they are doing so – is dangerous.

56.     That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers or information such as a finger scan, and/or data derived therefrom, who exactly is collecting their biometric data, where it will be transmitted and for what purposes, and for how long.

57.     Thus, BIPA is the Illinois Legislature's expression that Illinois citizens have biometric privacy rights, as created by BIPA.

58.     Defendants disregarded these obligations and instead unlawfully collected, stored, and used donors' biometric identifiers and information, without ever receiving the individual's informed written consent as required by BIPA.

59.     Because Defendants neither published a BIPA-mandated data retention policy nor disclosed the purposes for their collection of biometric data, Defendants' donors have no idea whether Defendants sell, disclose, re-disclose, or otherwise disseminated their biometric data.

60.     Nor are Plaintiffs and the putative Class told to whom Defendants currently disclose their biometric data, or what might happen to their biometric data in the event of a buyout, merger, or a bankruptcy.

61.     By and through the actions detailed above, Defendants have not only disregard the Class' privacy rights, but they have also violated BIPA.

62.     Defendants' above-described use of biometrics benefits only Defendants. There is no corresponding benefit to donors; they are forced to use biometrics to donate plasma.

### CLASS ALLEGATIONS

63.     Plaintiffs Vaughan and Minniefield bring this action on behalf of themselves and on behalf of the following proposed "Biomat Class":

> All persons who were enrolled in the biometric system used by Defendant Biomat USA, Inc. in Illinois from five years preceding the filing of this action to the date a class notice is mailed in this action.

64.     Plaintiff Vega brings this action on behalf of herself and on behalf of the following proposed "Talecris Class":

> All persons who were enrolled in the biometric system used by Defendant Talecris Plasma Resources, Inc. in Illinois from five years preceding the filing of this action to the date a class notice is mailed in this action.

65.     Plaintiff Darnell brings this action on behalf of himself and on behalf of the following "IBB Class":

> All persons who were enrolled in the biometric system used by Defendant Interstate Blood Bank, Inc. in Illinois from five years preceding the filing of this action to the date a class notice is mailed in this action.

Excluded from the class are Defendants' officers and directors, Plaintiffs' counsel, and any member of the judiciary presiding over this action.

66.     Plaintiffs and the members of each respective Class are similar to one another because they were all subject to the same allegedly illegal practices: scanning their fingerprints in Defendants' verification system despite Defendants failing to adhere to the requirements of the Biometric Information Privacy Act.

67.     Each Class includes more than 100 members. *See* ECF No. 1, Notice of Removal, ¶ 10.

68.     As a result, each Class is so numerous that joining of all class members in one lawsuit is not practical.

69.     The issues involved in this lawsuit present common questions of law and fact, including: whether Defendants required each Class to use their fingerprints; whether Defendants collected the Class's biometric identifiers or information; and whether Defendants complied with the procedures in 740 ILCS 14/15(a) and (b) of the Biometric Information Privacy Act.

70.     These common questions of law and fact predominate over the variations that may

exist between members of the Class, if any.

71.     Plaintiffs, the members of the Classes, and Defendants have a commonality of interest in the subject matter of the lawsuit and the remedy sought.

72.     If individual actions were required to be brought by each member of the Classes injured or affected, the result would be a multiplicity of actions, creating a hardship to the Classes, to the Court, and to Defendants.

73.     Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Class is entitled.

74.     The books and records of Defendants are material to Plaintiffs' case as they disclose how and when Plaintiffs and the Class scanned their fingerprints in Defendants' verification system and what information Defendants provided Plaintiffs and the Class about the collection, retention, use, and possession of their biometric identifiers and information.

75.     Plaintiffs and counsel will fairly and adequately protect the interests of the Class.

76.     Plaintiffs retained counsel experienced in complex class action litigation.

### COUNT I – FOR DAMAGES AND INJUNCTIVE RELIEF AGAINST BIOMAT ONLY VIOLATION OF 740 ILCS 14/1, *ET SEQ*. – THE BIOMETRIC INFORMATION PRIVACY ACT (Vaughan and Minniefield Against Biomat)

77.     Plaintiffs Vaughn and Minniefield, individually and on behalf of all others similarly situated in the Biomat Class, repeat, re-allege, and incorporate all preceding paragraphs as if fully set forth herein.

78.     BIPA is a remedial statute designed to protect consumers, by requiring consent and disclosures associated with the handling of biometrics, particularly in the context of biometric technology. 740 ILCS 14/5(g), 14/10, and 14/15(b)(3).

79.     The Illinois General Assembly's recognition of the importance of the public policy

and benefits underpinning BIPA's enactment, and the regulation of biometrics collection, is detailed in the text of the statute itself.

80.     Biomat has been and continues to be a "private entity."

81.     Biomat has been and continue to be in possession of Plaintiffs Vaughn and Minniefield and the Biomat Class's biometrics, and it collected, captured, or otherwise obtained their biometric identifiers and biometric information within the meaning of the Act.

82.     As more fully set forth above, at relevant times Defendant Biomat collected, captured, or otherwise obtained, Plaintiffs Vaughn and Minniefield and the Biomat Class's biometric identifiers and biometric information based on those identifiers as defined by BIPA, 740 ILCS 14/10, through the imposition of biometric devices.

83.     In violation of 740 ILCS 14/15(a), Defendant Biomat failed to make such a written policy publicly available to Plaintiffs Vaughn and Minniefield and the Biomat Class members.

84.     In violation of 740 ILCS 14/15(b), Defendant Biomat has collected, captured, stored, and/or otherwise obtained Plaintiffs' Vaughn and Minniefield and the Biomat Class's biometric identifiers and biometric information, without:

   a. informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, that the biometric identifiers or biometric information were being obtained, collected, captured, and/or stored;

   b. informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, of the specific purpose and length of term for which the biometric identifiers or biometric information were being collected, stored, and used; and

   c. receiving a written release executed by Plaintiffs and/or Class members and executed by Plaintiffs and/or Class members as a condition of employment or donation.

85.     Defendant Biomat took Plaintiffs Vaughn and Minniefield and the Biomat Class's and other class members' finger scans, and knowingly caused their biometrics to be captured, collected, stored, and/or otherwise obtained without making publicly available the required policy that explains, for example, any purposes for which the biometric identifiers and information were collected, a retention schedule, and guidelines for permanently destroying biometric identifiers and information.

86.     As a result of Defendant Biomat's above- described acts and omissions, Defendant Biomat has invaded the privacy of Plaintiff Vaughn and Minniefield and the Biomat Class; it has unlawfully and coercively taken their biometrics; it has failed to provide them with information required by BIPA; it has deprived them of benefits, rights, opportunities and decisions conferred and required by the Illinois legislature via BIPA; and it illegally captured, collected, recorded, possessed, converted, and/or stored their finger scans, biometrics, and property.

87.     Accordingly, Defendant Biomat has violated the BIPA, and Plaintiffs Vaughn and Minniefield and the Biomat Class have been damaged and are entitled to damages available under the BIPA, including liquidated damages of $1,000 per negligent violation and/or $5,000 per willful or reckless violation. 740 ILCS 14/20(1).

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Vaughn and Minniefield and the Biomat Class, individually and on behalf of the Class of similarly situated individuals, prays for an Order as follows:

A.     Finding this action satisfies the prerequisites for maintenance as a class action set forth in the Federal Rules of Civil Procedure and certifying the class as defined herein;

B.      Designating and appointing Plaintiffs as representative of the class and Plaintiffs' undersigned counsel as Class Counsel;

C.      Entering judgment in favor of Plaintiffs Vaughn and Minniefield and the Biomat Class and against Defendant Biomat;

D.      Awarding Plaintiffs Vaughn and Minniefield and the Biomat Class members liquidated damages of $1,000 per *each* negligent violation, $5,000 per *each* willful or reckless violation of BIPA;

E.      Awarding Plaintiffs Vaughn and Minniefield and the Biomat Class members reasonable attorneys' fees and costs incurred in this litigation; and

F.      Granting all such other and further relief as the Court deems just and appropriate.

### COUNT II – FOR DAMAGES AND INJUNCTIVE RELIEF AGAINST TALECRIS ONLY VIOLATION OF 740 ILCS 14/1, *ET SEQ*. – THE BIOMETRIC INFORMATION PRIVACY ACT (Vega Against Talecris)

88.     Plaintiff Vega, individually and on behalf of all others similarly situated in the Talecris Class, repeats, re-alleges, and incorporates all preceding paragraphs as if fully set forth herein.

89.     BIPA is a remedial statute designed to protect consumers, by requiring consent and disclosures associated with the handling of biometrics, particularly in the context of biometric technology. 740 ILCS 14/5(g), 14/10, and 14/15(b)(3).

90.     The Illinois General Assembly's recognition of the importance of the public policy and benefits underpinning BIPA's enactment, and the regulation of biometrics collection, is detailed in the text of the statute itself.

91.     Talecris has been and continues to be a "private entity."

92.     Talecris has been and continue to be in possession of Plaintiff Vega and the Talecris

Class's biometrics, and it collected, captured, or otherwise obtained their biometric identifiers and biometric information within the meaning of the Act.

93.     As more fully set forth above, at relevant times Defendant Talecris collected, captured, or otherwise obtained, Plaintiff Vega and the Biomat Class's biometric identifiers and biometric information based on those identifiers as defined by BIPA, 740 ILCS 14/10, through the imposition of biometric devices.

94.     In violation of 740 ILCS 14/15(a), Defendant Talecris failed to make such a written policy publicly available to Plaintiffs Vega and the Talecris Class members.

95.     In violation of 740 ILCS 14/15(b), Defendant Talecris has collected, captured, stored, and/or otherwise obtained Plaintiff Vega and the Talecris Class's biometric identifiers and biometric information, without:

      d.  informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, that the biometric identifiers or biometric information were being obtained, collected, captured, and/or stored;

      e.  informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, of the specific purpose and length of term for which the biometric identifiers or biometric information were being collected, stored, and used; and

      f.  receiving a written release executed by Plaintiffs and/or Class members and executed by Plaintiffs and/or Class members as a condition of employment or donation.

96.     Defendant Talecris took Plaintiff Vega and the Talecris Class's and other class members' finger scans, and knowingly caused their biometrics to be captured, collected, stored, and/or otherwise obtained without making publicly available the required policy that explains, for example, any purposes for which the biometric identifiers and information were collected, a

retention schedule, and guidelines for permanently destroying biometric identifiers and information.

97. As a result of Defendant Talecris' above- described acts and omissions, Defendant Talecris has invaded the privacy of Plaintiff Vega and the Talecris Class; it has unlawfully and coercively taken their biometrics; it has failed to provide them with information required by BIPA; it has deprived them of benefits, rights, opportunities and decisions conferred and required by the Illinois legislature via BIPA; and it illegally captured, collected, recorded, possessed, converted, and/or stored their finger scans, biometrics, and property.

98. Accordingly, Defendant Talecris has violated the BIPA, and Plaintiff Vega and the Biomat Class have been damaged and are entitled to damages available under the BIPA, including liquidated damages of $1,000 per negligent violation and/or $5,000 per willful or reckless violation. 740 ILCS 14/20(1).

<strong>PRAYER FOR RELIEF</strong>

**WHEREFORE**, Plaintiff Vega and the Talecris Class, individually and on behalf of the Class of similarly situated individuals, prays for an Order as follows:

G. Finding this action satisfies the prerequisites for maintenance as a class action set forth in the Federal Rules of Civil Procedure and certifying the class as defined herein;

H. Designating and appointing Plaintiffs as representative of the class and Plaintiffs' undersigned counsel as Class Counsel;

I. Entering judgment in favor of Plaintiff Vega and the Talecris Class and against Defendant Talecris;

J.      Awarding Plaintiff Vega and the Talecris Class members liquidated damages of $1,000 per *each* negligent violation, $5,000 per *each* willful or reckless violation of BIPA;

K.      Awarding Plaintiff Vega and the Talecris Class members reasonable attorneys' fees and costs incurred in this litigation; and

L.      Granting all such other and further relief as the Court deems just and appropriate.

### COUNT III – FOR DAMAGES AND INJUNCTIVE RELIEF AGAINST IBB ONLY VIOLATION OF 740 ILCS 14/1, *ET SEQ.* – THE BIOMETRIC INFORMATION PRIVACY ACT (Darnell Against IBBI)

99.     Plaintiff Darnell, individually and on behalf of all others similarly situated in the IBB Class, repeats, re-alleges, and incorporates all preceding paragraphs as if fully set forth herein.

100.    BIPA is a remedial statute designed to protect consumers, by requiring consent and disclosures associated with the handling of biometrics, particularly in the context of biometric technology. 740 ILCS 14/5(g), 14/10, and 14/15(b)(3).

101.    The Illinois General Assembly's recognition of the importance of the public policy and benefits underpinning BIPA's enactment, and the regulation of biometrics collection, is detailed in the text of the statute itself.

102.    IBB has been and continues to be a "private entity."

103.    IBB has been and continue to be in possession of Plaintiff Darnell and the IBB Class's biometrics, and it collected, captured, or otherwise obtained their biometric identifiers and biometric information within the meaning of the Act.

104.    As more fully set forth above, at relevant times Defendant IBB collected, captured, or otherwise obtained, Plaintiff Darnell and the IBB Class's biometric identifiers and biometric

information based on those identifiers as defined by BIPA, 740 ILCS 14/10, through the imposition of biometric devices.

105.     In violation of 740 ILCS 14/15(a), Defendant IBB failed to make such a written policy publicly available to Plaintiff Darnell and the IBB Class members.

106.     In violation of 740 ILCS 14/15(b), Defendant IBB has collected, captured, stored, and/or otherwise obtained Plaintiff Darnell and the IBB Class's biometric identifiers and biometric information, without:

> g.  informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, that the biometric identifiers or biometric information were being obtained, collected, captured, and/or stored;

> h.  informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, of the specific purpose and length of term for which the biometric identifiers or biometric information were being collected, stored, and used; and

> i.  receiving a written release executed by Plaintiffs and/or Class members and executed by Plaintiffs and/or Class members as a condition of employment or donation.

107.     Defendant IBB took Plaintiff Darnell and the IBB Class's and other class members' finger scans, and knowingly caused their biometrics to be captured, collected, stored, and/or otherwise obtained without making publicly available the required policy that explains, for example, any purposes for which the biometric identifiers and information were collected, a retention schedule, and guidelines for permanently destroying biometric identifiers and information.

108.     As a result of Defendant IBB's above- described acts and omissions, Defendant IBB has invaded the privacy of Plaintiff Darnell and the IBB Class; it has unlawfully and coercively taken their biometrics; it has failed to provide them with information required by BIPA; it has deprived them of benefits, rights, opportunities and decisions conferred and required by the

Illinois legislature via BIPA; and it illegally captured, collected, recorded, possessed, converted, and/or stored their finger scans, biometrics, and property.

109.    Accordingly, Defendant IBB has violated the BIPA, and Plaintiff Darnell and the IBB Class have been damaged and are entitled to damages available under the BIPA, including liquidated damages of $1,000 per negligent violation and/or $5,000 per willful or reckless violation. 740 ILCS 14/20(1).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Darnell and the IBB Class, individually and on behalf of the Class of similarly situated individuals, prays for an Order as follows:

M.    Finding this action satisfies the prerequisites for maintenance as a class action set forth in the Federal Rules of Civil Procedure and certifying the class as defined herein;

N.    Designating and appointing Plaintiffs as representative of the class and Plaintiffs' undersigned counsel as Class Counsel;

O.    Entering judgment in favor of Plaintiff Darnell and the IBB Class and against Defendant IBB;

P.    Awarding Plaintiff Darnell and the IBB Class members liquidated damages of $1,000 per *each* negligent violation, $5,000 per *each* willful or reckless violation of BIPA;

Q.    Awarding Plaintiff Darnell and the IBB Class members reasonable attorneys' fees and costs incurred in this litigation; and

R.    Granting all such other and further relief as the Court deems just and appropriate.

Dated: May 16, 2022                    By:    */s/ Mara Baltabols*
                                              David Fish (dfish@fishlawfirm.com)
                                              Mara Baltabols (mara@fishlawfirm.com)
                                              FISH POTTER BOLAÑOS, P.C.
                                              200 East Fifth Avenue, Suite 123
                                              Naperville, Illinois 60563
                                              Tel: 630.355.7590
                                              COUNSEL FOR THE PLAINTIFFS AND THE
                                              PUTATIVE CLASS

## <u>CERTIFICATE OF SERVICE</u>

I, Mara Baltabols, an attorney, hereby certify that the foregoing was served on all counsel of record through service generated by the Court's e-filing system and via electronic mail on May 16, 2022.


*/s/* Mara Baltabols