**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BRIAN R. VAUGHAN, JASON DARNELL, FEBBIE MINNIEFIELD, and ADRIEL VEGA, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No.: 20-cv-04241 |
| v. | Hon. Marvin E. Aspen |
| BIOMAT USA, INC., TALECRIS PLASMA RESOURCES, INC., and INTERSTATE BLOOD BANK, INC., | Mag. Judge Jeffrey Cole |
| *Defendants*. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION
TO DISMISS THE SECOND AMENDED COMPLAINT**

**Table of Contents**

**Page**

INTRODUCTION ……………………………………………………………………… 1

ARGUMENT…………………………………………………………………………...1

    I.     THE CLAIMS ARE NOT PREMPTED BY CONFLICT

         PREEMPTION……………………………………………………………1

    II.    PLAINTIFF'S STATE A CLAIM UNDER SECTION 15(B) …………………...7

    III.   BIOMETRIC INFORMATION USED TO IDENTIFY A PLASMA

         SELLER IS NOT EXEMPT UNDER BIPA …………………………………10

         A.  Plasma Sellers are not "Patients" In a "Health Care

             Setting"……………….............................................................................10

         B.  The Defendants' Reliance Upon "information collected, used or stored for

             health care treatment" Under HIPAA Is

             Misplaced…………………………………………………………...13

         C.  Finger Scans Do Not "Validate Scientific Testing or

             Screening"………………………………………………………17

    IV.   PLAINTIFFS' CLAIMS ARE TIMELY……………………………………….. 20

         A.  The One-Year Period of 735 ILCS 5/13-201 Does Not Apply Because

             Plaintiffs Do Not Allege Publication and Publication Is Not an

             Element of Plaintiffs' Claims ...………………………………… 21

         B.  The Two-year Period of 735 ILCS 5/13-202 for Personal Injury Torts

             Does Not Apply ...………………………………………….. 21

    V.    STATE OF MIND ALLEGATIONS ARE IRRELEVANT TO EVALUATING

         THE PLEADING SUFFICIENCY OF BIPA CLAIMS, BUT IN ANY EVENT,

         ARE SUFFICIENT PLED………………………………………………… 24

## Table of Authorities

**Cases**                                                                                               **Page**

*Aux Sable Liquid Products v. Murphy*, 526 F.3d 1028 (7th Cir. 2008)…………………………….. 2

*BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015)………………………… 7, 20, 23

*Benitez v. KFC Nat. Mgmt. Co.*, 305 Ill. App. 3d 1027, 1034 (1999) ………………………… 21

*Bradenberg v. Meridian Senior Living, LLC,* 564 F. Supp. 3d 627, 635 (C.D. Ill. 2021).. 9, 20, 23

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ………………..7

*Bruhn v. New Albertson's Inc.,* No. 18-CH-01737 (Cir. Ct. Cook Cty. July 2, 2019)…………. 16

*Burlinski v. Top Golf USA Inc.*, 19-CV-06700, 2020 WL 5253150, at *8 (N.D. Ill. Sept. 3 2020)………………………………………………………………………………………..…. 20, 22

*Carrasco v. Freudenberg Household Prods., LP*, 19 L 279, at 2 (Cir. Ct. Kane Cty. Nov. 15, 2019) …………………………………………………………………………………………… 20

*Chavez v. Temperature Equipment Corp*, No. 2019 CH 2538, at 6-10 (Cir. Ct. Cook Cty., Ill. Sep. 11, 2019) …………………………………………………………………………..…. 20

*Christmas v. Landmark of Richton Park*, 20CH5439 (Oct. 22, 2021, Cir. Ct. Cook Cty., Ill.) ….. 9

*Cortez v. Headly Mfg. Co.*, 19 CH 4935, at 2-7 (Cir. Ct. Cook Cty. Nov. 20, 2019) ………….. 20

*Costello v. BeavEx, Inc.,* 810 F.3d 1045, 1050 (7th Cir. 2016)………………………………… 1

*Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604, 614 (N.D. Ill. 2020) ..…………… 7, 23

*County Of Cook v. Illinois Labor Relations Bd. Local Panel*, 347 Ill. App. 3d 538, 547, 807 N.E.2d 613, 621 (2004) ………………………………………………………………….. 18

*Crumpton v. Octapharma Plasma, Inc*., 513 F. Supp. 3d 1006, 1014 (N.D. Ill. 2021)………………………………………………………. 3, 4, 12, 15, 18

*Ctr. Video Indus. Co. v. Roadway Package Sys., Inc*., 90 F.3d 185, 187 (7th Cir. 1996) ...…… 18

*Diaz v. Silver Cross Hosp. & Med. Ctrs*., No. 2018 CH 001327 (Cir. Ct. Will Cnty. Aug. 29, 2019)………………………………………………………………………………………. 17

*Figueroa v. Kronos Inc*., 2020 WL 1848206, at *8 (N.D. Ill. Apr. 13, 2020)……………… 20, 24

*Fleury v. Union Pac. R.R. Co.*, 528 F. Supp. 3d 885, 892 (N.D. Ill. 2021) ……...…………… 4, 8

*Fuesting v. Uline, Inc*., 30 F. Supp. 3d 739, 742 (N.D. Ill. 2014)……………………………… 19

*Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 845 (N.D. Ill. 2021) ………….. 13, 16

*H.K. through Farwell v. Google LLC*, 2022 WL 1568361, at *3 (C.D. Ill. Mar. 31, 2022) ……. 4

*Hunter v. J.S.T.* Corporation, 19 CH 929 (Cir. Ct. Lake Cty., June 24, 2002) ………………… 20

*In re Jaffe*, 932 F.3d 602, 606 (7th Cir. 2019)……………………………………………… 17, 19

*Kaufmann v. Schroeder*, 241 Ill. 2d 194, 197 (2011)………………………………...………. 12

*Marion v. Ring Container*, 19 L 89, at 2 (Cir. Ct. Kankakee Cty. Jan. 24, 2020) …………...… 20

*Marsh v. CSL Plasma Inc.,* 503 F. Supp. 3d 677, 685 (N.D. Ill. 2020)………… 2, 3, 4, 12, 13, 24

*Martinez v. Ralph Lauren Corp., Inc.*, 1:21-CV-01181, 2022 WL 900019, at *7 (N.D. Ill. Mar. 27, 2022) ……………………………………………………………………………………… 20

*Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 390 (7th Cir. 2010)……………………… 2

*Mazya v. Northwestern,* 18 CH 07161, at 4 (Cir. Ct. Cook Cty., Nov. 2, 2020) ……………… 20

*McGinnis v. United States Cold Storage, Inc.,* 19 L 9, at 3 (Cir. Ct. Will Cty. Nov. 4, 2020) …………………………………………………………………...…….. 20, 22

*Miller v. Motorola*, 202 Ill. App. 3d 976, 980 (Ill. App. 1st Dist. 1990) ……………………… 21

*Mosby v. Ingalls Mem'l Hosp.*, 2022 IL App (1st) 200822, ¶ 39 ………………………………… 15

*New Mexico Dep't of Human Servs v Dep't of Health*, 4 F.3d 882, 886 (10th Cir. 1993)………. 6

*Owens v. Wendy's International, LLC*, 18 CH 11423, pp. 4-6 (Cir. Ct. Cook Cty, June 8, 2020) ……………………………………………………..... 20, 22

*Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046, 1049 (7th Cir. 2013)……………… 1, 5

*Peaks-Smith vs. St. Anthony Hospital*, 2018 CH 2077 (Cir. Ct. Cook Cty. Jan 7, 2020)………. 15

*People ex rel. Ill. Dep't of Labor v. Tri State Tours, Inc*., 342 Ill. App. 3d 842, 848, 795 N.E.2d 990, 995 (2003) …………………………………………………………………...… 22

*People ex rel. Webb v. Wortham,* 2018 IL App (2d) 170445, ¶ 27 …………………………… 20

*Phillips v. BioLife Plasma, LLC*, Case No. 2020 CH 05758 (Cook County, IL) …………………………………………………………………………… 3, 4

*Roach v. Wal-Mart*, 2019 CH 1107, at 4 (Cir. Ct. Cook Cty. Oct. 25, 2019) ………………….. 20

*Rogers v. BNSF Railway Co.*, 2019 WL 5635180 (N.D. Ill. Oct. 31, 2019) ........................... 4, 24

*Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612 (N.D. Ill. 2019) .................... 19

*Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 36…………………...……… 9, 20, 22, 23

*Slater, et al. v. H&M, et al.,* 2018 CH 16030 (Nov. 4, 2019, Cir. Ct. Cook Cty., Ill.) … 10, 20, 22

*Smith v. Top Die,* 2019 L 248 (Winnebago Cty, March 12, 2020) ……………………………….. 20

*Snider v. Heartland Beef, Inc.*, 2020 WL 4880163 (C.D. Ill. Aug. 14, 2020)………………….. 23

*Soltysik v. Parsec, Inc.*, 19 L 136, at 34-36 (Cir. Ct. DuPage Cty. Oct. 17, 2019) …………..… 20

*Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)…………………………..… 10

*Tims v. Black Horse Carriers, Inc.*, No. 2019 CH 03522, at 2-3 (Cir. Ct. Cook Cty. Sep. 23, 2019) ………………………………………………………………………….. 20

*Thomas by & through Phillips v. Illinois Dep't of Human Services*, 2021 WL 4439417, at *2 (N.D. Ill. Sept. 28, 2021)……………………………………………………………… 14

*Thurman v. Northshore University Health System*, 2018 CH 3544 (Cir. Ct. Cook Cty. Dec. 12, 2019)………………………………………………………………………… 16

*Treadwell v. Power Sols. Int'l, Inc.*, 427 F. Supp. 3d 984, 987 (N.D. Ill. 2019)……………….. 19

*Troop v. Parco, Ltd.*, 19-L-81 (Peoria County) ……………………………………………….. 20

*Vo v. VSP Retail Dev. Holding, Inc.*, 19 C 7187, 2020 WL 1445605, at *2 (N.D. Ill. Mar. 25, 2020) ………………………………………………………………..………… 12, 13

*Wells v. Relish Labs*, 19 CH 00987 (June 8, 2020) …………………………………..…… 20

*Woodard v. Dylan's Candybar LLC*, 19 CH 05158, at 10-14 (Cir. Ct. Cook Cty. Nov. 20, 2019)

*Wyeth v. Levine*, 555 U.S. 555, 574 (2009)…………………………………………… 2, 6

*Wypych v. Cheese Merchants of America, LLC,* 20 CH 2437 (July 21, 2021, Cir. Ct. Cook Cty., Ill.) ……………………………………………………………………… 10

*Yi v. Sterling Collision Centers, Inc.,* 480 F.3d 505, 508 (7th Cir. 2007) …..………….……. 19

*Young v. Tri City Foods,* 18 CH 13114, at 1 (Cir. Ct. Cook Cty., June 8, 2020) ……………. 20

**Statutes**

735 ILCS 5/13-201 ………………………………………………………………….. 21

735 ILCS 5/13-202 ………………………………………………………………… 21, 22

740 ILCS 14/1 ……………………………………………………………………… 1

740 ILCS 14/10 ……………………………………………………… 10, 12, 14, 17

740 ILCS 14/15(a) ………………………………………………………………… 2, 6

740 ILCS 14/15(b) ……………………………………………………………… 7, 8

740 ILCS 14/15(b)(3) ………………………………………………………………… 9

740 ILCS 14/20(1)-(2) ……………………………………………………………… 23

740 ILCS 14/25(c) ………………………………………………………………… 17

740 ILCS 14/5(a)-(c)………………………………………………………………… 19

**Other Authorities**

95th Ill. Gen. Assem., House Proceedings, May 30, 2008, at 249 (statement of Rep. Ryg)…… 19

https://www.merriam-webster.com/dictionary/patient .................................................. 11

https://www.ihs.gov/sites/privacyact/themes/responsive2017/display_objects/documents/PvcFR0 3.pdf ...................................................................................................................... 15

https://biolifeilfingerscansettlement.com/wp-content/uploads/2022/02/BioLife_SA.pdf ............ 4

*Publication*, <u>Black's Law Dictionary</u> (10th ed. 2014) …………………………………………... 21

## Regulations

21 C.F.R. § 11.200 ………………………………………………………………………… 3

21 C.F.R. § 11.200(a) ……………………………………………………………………… 3

21 C.F.R. § 606.160(b)(1) ………………………………………………………………… 4

21 C.F.R. § 630.10 ………………………………………………………………………… 5

21 C.F.R. § 630.10(g)(1) ………………………………………………………………… 4

21 C.F.R. § 640.65 ………………………………………………………………………… 4

21 C.F.R. § 640.65(b)(3) ………………………………………………………………… 4

21 C.F.R. § 640.72 ………………………………………………………………………...… 5

45 C.F.R. §103 …………………………………………………………………………… 13

45 C.F.R. *§* 160.103 ………………………………………………………………….…… 13

65 Fed. Reg. 82,477 (Dec. 28, 2000) …………………………………………………… 14

65 Fed. Reg. 82,572 ……………………………………………………………………… 15

65 FR 82462-01 …………………………………………………………………………… 15

80 Fed. Reg. 29,869 (May 22, 2015) ………………………………………………………… 2, 6

## INTRODUCTION

Plaintiffs bring this action against Biomat USA, Inc., Talecris Plasma Resources, Inc. and Interstate Blood Bank, Inc. ("Defendants") for invading their privacy by unlawfully collecting, using, storing, and disseminating their biometric data without their consent or providing the statutorily-mandated disclosures in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq*.

For years, Defendants have extracted biometric data from some of the most vulnerable people in our society: those people so financially insecure that they sell their plasma. Although BIPA had been on the books for over a decade, Defendants did *nothing* to comply with its simple, straightforward, and easy-to-follow requirements. The Defendants had to do little more in exchange for collecting biometric information than have its plasma sellers fill out a few-sentences long release disclosing who was getting their biometric information.

In the Motion to Dismiss, the Defendants are asking this Court to disagree with several Illinois appellate court opinions, and countless District Court cases--including two well-reasoned opinions that rejected the very same arguments made by other plasma purchasing competitors specifically in the BIPA context.

## ARGUMENT

## I. THE CLAIMS ARE NOT PREEMPTED BY CONFLICT PREEMPTION.

The Defendants argue that conflict preemption bar Plaintiffs' BIPA claims. "The touchstone of preemption analysis is the intent of Congress." *Costello v. BeavEx, Inc.,* 810 F.3d 1045, 1050 (7th Cir. 2016). Courts must analyze Congressional intent "through a lens that presumes that [] state law has not been preempted" and the party pushing preemption has the burden of proof. *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046, 1049 (7th Cir. 2013).

*See also, Wyeth v. Levine*, 555 U.S. 555, 565, 572 (2009)("we start with the assumption that the historic police powers of the States were not to be superseded").

Conflict preemption "applies when federal and state law so directly conflict that it would be 'impossible' for a person or organization simultaneously to comply with both." *Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 390 (7th Cir. 2010); *Marsh v. CSL Plasma Inc.,* 503 F. Supp. 3d 677, 685 (N.D. Ill. 2020). "[M]ere differences between state and federal regulation of the same subject are not conclusive of preemption ... the crucial inquiry is whether [state law] differs from [federal law] in such a way that achievement of the congressional objective ... is frustrated." *Aux Sable v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008). BIPA is no obstacle to federal law's objectives and far from the "major damage to clear and substantial federal interests" required for conflict preemption. *Id.*

Defendants argue that a federal regulation requires that "individual product records" be maintained for at least 10 years (21 C.F.R. § 606.160(b)(1)) while BIPA requires that biometric information be destroyed no later than 3 years after the individual's last interaction with the private entity. 740 ILCS 14/15(a). Defendants' preemption argument fails for the following reasons:

***First***, there is nothing in the BIPA that is "impossible" to comply with alongside federal regulations. Of course, it is necessary to get proof of a plasma seller's identity, but nothing in federal law requires Defendants to use biometrics. For example, the Defendants could use a driver's license or one of the many other forms of photographic identification that we are all used to supplying when we go the airport, get our drivers license renewed, etc.

What's more, while the federal regulations governing donor collection allow biometrics, they do no not require it. *See,* 80 Fed. Reg. 29,869 (May 22, 2015). ("[W]e have not specified the means of establishing proof. We believe that photographic identification, a valid driver's license,

validated biometric means, or other means can be useful in establishing identity.")  And, more to

the point, 21 CFR § 11.200 specifically allows "signatures that are not based on biometrics."  21

CFR § 11.200(a).  To this point, the Defendants utilized photographic consent to confirm identity.

See ¶ 4 of the Consent Agreement, attached as Ex. A ("I understand that before my first donation,

my photograph was taken, with my consent, for identification purposes.")[1]

Two decisions have analyzed and rejected the argument that federal law preempts a plasma

seller's BIPA claims.  *See, Crumpton v. Octapharma Plasma, Inc*., 513 F. Supp. 3d 1006, 1014

(N.D. Ill. 2021)(J. Kendall) and *Marsh v. CSL Plasma Inc.*, 503 F. Supp. 3d 677, 685 (N.D. Ill.

2020)(J. Chang).  As here, in *Crumpton,* the plasma purchasing company argued that because

federal law mandated keeping donor records longer than BIPA allows, conflict preemption applies.

[*See,* ECF #45 19-CV-08402].  Both decisions rejected conflict preemption:

> Octapharma's decision to use biometric information, or assessment that such a
> method is superior to the alternatives, does not alter the fact that it is not required
> by federal law. … Octapharma may satisfy both federal law and BIPA by using an
> alternate method of proving donor identity. Conflict preemption, then, does not
> apply.

*Crumpton*, 513 F. Supp. 3d at 1014.

> federal law "does not require plasma-donation centers to collect or use biometric
> data. … Nothing in federal law or regulation prevents CSL from obeying BIPA
> while complying with federal law. Conflict preemption, then, does not apply."

*Marsh*, 503 F. Supp. 3d at 685.

That federal law requires Defendants to store biometrics for 10 years is purely a litigation-

created fiction--they *currently* delete this information appropriately 6 months after the individual

stops selling plasma.  The Court can take Judicial Notice that the Defendants' Privacy Policy

---

[1] Exhibit A is an unredacted copy of one of the Exhibit A forms that Defendants attached to their Motion to Dismiss.

requires the deletion of biometric data "as soon as practicable when *6 months* have elapsed since the donor last scanned a fingertip". (Exhibit H, ¶ 11) (emphasis added)

The Court can also take Judicial Notice that the plasma collection defendants in *Crumpton* and *Marsh* (along with another plasma collection case in state court *Phillips v. Biolife*) all agreed to prospective relief in their BIPA settlement agreements that if they utilize biometrics, then they will destroy collected biometric information within 3 years ((*See Crumpton,* 19-cv-08402 ECF. #78-1 at par. 2.2); *Marsh,* 19-cv-07606 ECF #115-1 at par. 2.2); *Phillips v. BioLife Plasma, LLC*, Case No. 2020 CH 05758 (Cook County, IL at par. 52)).[2]

Likewise, outside of the plasma collection context, courts have also uniformly rejected the notion that complex federal laws in regulated industries preempt BIPA. *See, Fleury v. Union Pac. R.R. Co.*, 528 F. Supp. 3d 885, 892 (N.D. Ill. 2021)(federal transportation regulations do not preempt BIPA); *Rogers v. BNSF Ry. Co.*, 2022 WL 787955, at *3 (N.D. Ill. Mar. 15, 2022)(same); *H.K. v. Google LLC*, 2022 WL 1568361, at *3 (C.D. Ill. Mar. 31, 2022)(federal privacy regulations do not preempt BIPA); *Karling v. Samsara*, 2022 WL 2663513 (N.D. Ill. July 11, 2022)(rejecting conflict preemption argument that BIPA frustrates Congressional encouragement of biometrics in truck safety and despite that federal law specifically allows biometrics).

*Second*, even if federal law required biometrics for donor verification (and it does not), nowhere does 21 C.F.R. § 606.160(b)(1) say biometric data is part of an "individual product record" that must be maintained for 10 years; in fact, it does not reference biometrics at all. After unwinding a small regulatory puzzle—it is clear that the records referred to by this regulation do not even cover biometrics. Starting with 21 C.F.R. § 640.65, a plasma company is required to

---

[2] The *Phillips* settlement agreement is available at: https://biolifeilfingerscansettlement.com/wp-content/uploads/2022/02/BioLife_SA.pdf and the settlement agreements are on the docket in the *Marsh* and *Octpharma* cases. Biolife continues to use biometric information and destroys it within 6 months of the individual's last plasma donation. https://www.biolifeplasma.com/legal/privacy-notice (last visited July 13, 2022)

establish a "donor identification system ... that positively identifies each donor and relates such donor directly to his blood[.]" *Id.* § 640.65(b)(3). Similarly, 21 C.F.R. § 630.10(g)(1) requires plasma companies to "obtain proof of identity of the donor and a postal address". Neither the § 640.65 "donor identification system" nor the § 630.10 "proof of identity" records require collecting donors' biometric data at all. In fact, the FDA has expressly declined to require it. See 80 Fed Reg 29,869 (May 22, 2015) ("We have not specified the means of establishing proof."). Thus, § 630.10 and § 640.72 only require that "proof of identity" records must be maintained—not that all such records be collected. Defendants' argument is that any "proof of identity" record that it chooses to use then becomes a matter of required retention. But that argument has two significant problems. The first is that this argument admits there is no conflict between BIPA and the federal regulations. If BIPA prohibits the collection of biometric data that is retained for more than three years, and the FDA requires a longer retention period only if Defendants chooses to collect biometric data, the answer is that Defendants may only choose the other options off the menu of the (entirely non-mandated) methods of identifying donors. The second problem with this argument—and more importantly—is that the regulations do not mandate the retention of everything that Defendants might choose to collect as part of its "donor identification" system or its "proof of identity" records, but only those that the respective sections actually require. See 21 C.F.R. § 630.10 and 21 C.F.R. § 640.72. The regulations just do not require the collection of donor biometric data. Further, the regulations only require the records that would actually be material (i.e., "as necessary") for inspectors to trace plasma products through the manufacturing process, should problems arise later—as in, the donor's name and contact information, not fingerprints. *Id.* §§ 600.12(a), (b)(1).

**Third,** even if there were a conflict (and there is not), and even if federal law mandated biometrics (it does not), the Defendants here still have not met their burden to show the "major

damage" to federal interests for conflict preemption to occur. *Patriotic Veterans*, 736 F.3d at 1050. First, Defendants would still be able to track every single donor using the photo identification and personal information it already collects from donors in practice (and in satisfaction of actual FDA requirements). Second, if the more stringent BIPA standard applied over the FDCA's, Defendants could keep records of its donors' biometric data for 3 years—and then keep all of the other identifying information it collects longer. Consider just how difficult it would be for an ineligible donor to slip past Defendants if BIPA's 3-year requirement carried the day: A person would have to (a) have donated plasma more than 3 years ago, but less than 10 years ago, and (b) present a believably fake photo identification card, name, address, proof of address, and proof of social security number (which would be odd because they would want the check for payment made out to themselves, as opposed to someone else). Then, the individual would also have to successfully lie their way through Defendants' questionnaire and screening and blood test. Then, after all that, Defendants would have to fail to identify any issues with the plasma sample during its testing process. This does not create a realistic problem for Defendants, and would be a minor interference with the federal interest in protecting the plasma supply chain's safety, at most. *Cf. New Mexico Dep't of Human Servs v Dep't of Health*, 4 F.3d 882, 886 (10th Cir. 1993) (no conflict preemption where differences in national uniformity of marital income distribution process would not significantly undermine Medicaid goals). It is an insufficiently serious threat to federal interests to justify preemption. BIPA is no obstacle to the FDCA's objectives, far from the "major damage to clear and substantial federal interests" required for preemption.

It is also worth noting that BIPA does not prevent companies from collecting biometric information: BIPA is focused on how collection takes place: It just requires notice and consent.

**Fourth**, the federal rules allowing (but not requiring) biometrics were passed several years after BIPA. *See,* 80 Fed. Reg. 29,869 (May 22, 2015)   If Congress believed BIPA interfered with the FDA's rules, it presumably would have enacted a pre-emption provision. *See, Wyeth v. Levine*, 555 U.S. 555, 574 (2009)("If Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point").

**Finally**, even if the Defendants were somehow correct about their repeatedly-rejected preemption argument, it only applies to Plaintiffs' claims under 740 ILCS 14/15(a)--which sets forth the data retention requirement.  Defendants have not addressed how other sections of BIPA are implicated.  For example, preemption would not apply to the Plaintiffs' BIPA claims for failing to obtain written consent as required by 740 ILCS 14/15(b).

## II.    PLAINTIFFS STATE A CLAIM UNDER SECTION 15(b)

The Defendants argue that each of the Plaintiffs' claims (only to the extent brought pursuant to Section 15(b)) should be dismissed because of consent forms.  (Defendants have not attached a consent form for Plaintiff Jason Darnell so their arguments are not applicable to him). As to the remaining Plaintiffs, Defendants' arguments are properly rejected for two procedural reasons and one substantive reason.

As a threshold matter, it is inappropriate to consider the so-called consent forms on a motion to dismiss particularly where, as here, the Plaintiff allege (¶¶ 25, 52, 59-60) they were not provided a proper BIPA consent and the forms attached to the Second Amended Complaint are so heavily redacted.   *See, Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604, 614 (N.D. Ill. 2020)(refusing to allow the consideration of a BIPA consent form at the motion to dismiss stage if not specifically referenced in the complaint and noting that consent would relate to an affirmative defense rather than a motion to dismiss in any event); *See Brownmark Films, LLC v. Comedy*

*Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("[C]ourts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses."); FRE 106.

Second, the Complaint does not allege a separate Section 15(b) claim and "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims[.]" *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Rather, the question at the pleadings stage "is simply whether the complaint includes factual allegations that state a plausible claim for relief." *Id.* It is not appropriate at this stage to make a piecemeal dismissal of the claims.

Even if substantively considered, the consent forms do not come close to meeting BIPA's requirements. Paragraph 16 of Exhibit A provides that the fingerprint is for "authentication," "acknowledgement" and "verification" that the statements made by the donor during the screening process are accurate. This provision is not a disclosure related to, or written release authorizing, Defendants' collection of Plaintiffs' biometric data as required by BIPA Section 15(b). For ease of reference, the subject provision (paragraph 16) is copied here:

> I understand and agree that I will provide my fingerprint as biometric authentication of my identity as part of the automated screening process (one time at the beginning of the screening process and one time at the completion of the screening process). I further understand and agree that by and through the provision of my fingerprint following the completion of the health, medical, and lifestyle history questions and acknowledgement and verification statements contained in the automated screening process, I have acknowledged, verified, and agreed to, and will acknowledge, verify, and agree to, all of the information, answers, statements, and representations provided and made in response to such questions and statements and have represented, and will represent, that all such information, answers, statements, and representations are true, accurate, and complete. Id.

According to BIPA Section 15(b), the written release must "(1) inform[] the subject…that a biometric identifier or biometric information is being collected or stored; [and] (2) inform the subject…of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used." 740 ILCS 14/15(b). Defendants' purported consent does neither. For example, it leaves the individual with no information about how long the Defendants will keep the biometric information or that the information was turned over to a third

party, the vendor who administers the collection. The disclosure also does not disclose that the biometric information is being stored; to the contrary, it suggests that use is only for the initial "screening process" when, in actuality, Defendants and potentially third parties store it in their biometric databases. *See, Fleury v. Union Pac. R.R. Co.,* 528 F. Supp. 3d 885, 896 (N.D. Ill. 2021)(rejecting argument that BIPA consent form adequately addressed prior collection, use and storage); *Bradenberg v. Meridian Senior Living, LLC,* 564 F. Supp. 3d 627, 635 (C.D. Ill. 2021)(BIPA is a "strict liability statute" that requires informed consent in the form of providing statutorily required information). As such, the content of Paragraph 16 is woefully incomplete.

Exhibit A also is inadequate on its face as it fails to provide *informed* consent. BIPA defines a "written release" as "informed written consent". 740 ILCS 14/15(b)(3). Putting aside that Exhibit A does not have all the BIPA-required information, the referenced language does not appear until paragraph 16. That the consent language is not immediately apparent or in a standalone form diminishes the effectiveness of the release. Even if the location of the consent language were immaterial, the language at issue is plainly insufficient to meet the "safeguards to insure that individuals' . . . privacy rights in the biometric identifiers and biometric information are properly honored[.]" *Rosenbach*, 2019 IL 123186, ¶ 36.

Courts routinely reject "close enough" arguments that BIPA disclosures do not follow the strict mandatory statutory requirements. In *Christmas v. Landmark of Richton Park*, 20CH5439 (Oct. 22, 2021, Cir. Ct. Cook Cty., Ill.) (Exhibit B), the Judge Cohen denied the BIPA defendant's motion for summary judgment where the plaintiff was (a) shown an electronic copy of a BIPA consent form as part of enrolling onto a biometric timeclock and (b) also was provided an employee handbook containing a full BIPA waiver. The court noted that despite these disclosures, the policy purportedly electronically signed by Plaintiff does not actually identify any of the entities involved

9

in the collection, storing or destruction of the employee's biometric data. As stated in *Christmas*, "informed consent" is not accomplished when the subject does not have the "opportunity fully read and comprehend the notice before purportedly acknowledging it." *Id.* In *Wypych v. Cheese Merchants of America, LLC,* 20 CH 2437 (July 21, 2021, Cir. Ct. Cook Cty., Ill.) (Exhibit C), Judge Jacobius denied a motion to dismiss predicated on a BIPA disclosure being contained in handbook and in onboarding slides. Likewise, in *Slater, et al. v. H&M, et al.,* 2018 CH 16030 (Nov. 4, 2019, Cir. Ct. Cook Cty., Ill.), Judge Meyerson denied a motion to dismiss, finding that whether the defendants met Section 15(b)'s requirements with a consent form included in a handbook was not an "easily-proved issue[] of fact". Exhibit D (order and transcript at 51:20-52:3 [court ruling] & 21:8-22:12, 25:8-26:8 [plaintiff's argument re: insufficiency of handbook disclosure]). BIPA Section 15(b) requires more to obtain "informed written consent" than what Defendants did.

## III. Biometric Information Used To Identify A Plasma Seller Is Not Exempt Under BIPA.

### A. Plasma Sellers are not "Patients" In a "Health care Setting".

BIPA, 740 ILCS 14/10 provides in part: "Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under" HIPPA. Defendants argue that plasma sellers are "patients" who are in a "health care setting". As an initial matter, the Second Amended Complaint nowhere alleges that the Plaintiffs were "patients" or that the biometric disclosure occurred in a "healthcare setting". Resolving this dispute on a motion to dismiss is not appropriate. *See, Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Even if substantively considered, there are several reasons that the Defendants' position is inaccurate.

*First,* the Defendants provide no healthcare or treatment to the Plaintiffs. Here, Plaintiffs do not allege they are donating as patients in a healthcare setting, instead they allege repeatedly

they "sold plasma" to the Defendants.   What's more, Exhibit A to the Motion to Dismiss explicitly says the Defendants are not providing healthcare of any kind:[3]

> "I understand and agree that the Center is **not a health care provider,** but rather a plasma collection facility, that it and its staff **cannot provide, and are not providing, me with medical advice or treatment…"** (Exhibit A, attached hereto, p. 3 of 7 at ¶ 7(D))

> "The tests done on my blood and plasma are tests that are required by the FDA for the purpose of screening blood and plasma donors. These screening tests are ***NOT medical diagnostic tests and are NOT intended to diagnose any medical condition or obtain a formal medical, diagnosis or medical care*** from the Center staff."  (*Id.* at p. 4 of 7, ¶ 12)

The Defendants' admissions here foreclose any possibility that Plaintiffs are patients in a healthcare setting.

 As a ***secondary*** basis for denying the Motion, common dictionary definitions further undermine Defendant's argument.  Merriam-Webster defines a "patient" as "in individual awaiting or under medical care or treatment" or "the recipient of any of various personal services".[4]  It defines "health care" as "efforts made to maintain or restore physical, mental, or emotional well-being especially by trained and licensed professionals".  These definitions comport with the common sense understanding that a patient goes to a health care facility to get treatment (or "care").  To the contrary, Plaintiffs make money by selling their plasma to the Defendants; any medical screening that may have existed was to determine eligibility to sell their plasma not because they were "patients" or "in a healthcare setting".

---

[3] While the Plaintiffs have not agreed that this document is admissible on a Motion to Dismiss, after they filed the lawsuit the Defendants provided them with an unredacted copy of what they attached as Exhibit A to their Motion.

[4] https://www.merriam-webster.com/dictionary/patient

*Marsh* rejected an identical argument by analyzing various dictionary definitions of "patient" and "health care setting" and concluded that "a person who sells plasma to [a plasma collection company] is not a 'patient' in a 'health care setting' within BIPA's meaning. 503 F. Supp. 3d at 683–84.[5]  *See also, Kaufmann v. Schroeder*, 241 Ill. 2d 194, 197 (2011)(an inappropriate touching by a physician, in a hospital, and during a medical procedure does not arise out of "patient care" for purposes of statute of limitations).[6]

Defendants cite *Vo v. VSP Retail Dev. Holding, Inc.*, 19 C 7187, 2020 WL 1445605, at *2 (N.D. Ill. Mar. 25, 2020). In *Vo*, the plaintiff sued after she used software that provided "a health care service by ensuring the appropriate fit and positioning of corrective eyewear." *Id.* at 2.  The defendant, therefore, was helping eyecare patients who had to correct their vision.  *Id.* at 2 (noting that "VSP provides health care by selling a device or equipment in accordance with a prescription—namely eyewear—and by offering a service or procedure that affects the function of the body—namely vision."). As such, on its facts the case is readily distinguishable:    The

---

[5] Judge Kendall too analyzed this defense in *Crumpton*.  Her analysis, however, was on the *Plaintiff's* motion to strike an affirmative defense and therefor procedurally different.  From this standpoint, she concluded that based upon the definitions the Court analyzed, that plaintiff "has not demonstrated beyond a reasonable doubt that [defendant] can prove no set of facts indicating donors are also patients under BIPA." 513 F. Supp. 3d at 1016.  Of course, the opposite procedural stance is being used here because unlike in *Crumpton* where the Plaintiff's moved, here the Defendants are moving to dismiss.

[6] BIPA provides a particularized meaning of "biometric identifier," explicitly defined as a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. However, the legislature excluded from this definition all "information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under [HIPAA]." Id. (emphasis added). Given BIPA's explicit reference to "patient" information and HIPAA's regulation of "patient" privacy exclusively, this limited exclusion unquestionably applies only to patient information. This only makes sense. It would be highly imprudent—and indeed, potentially life-threatening—for a health care provider to withhold emergency treatment involving the collection of biometric identifiers or biometric information from an unconscious patient until they can sign a BIPA-compliant written release. BIPA's explicit reference to biometrics "from a patient" clearly memorializes the legislature's intent to exclude patient biometrics from the BIPA safeguards enacted because patient biometrics are already protected under HIPAA and its strict penalties.

Plaintiffs, here, were not getting corrections to their blood; they were selling material extracted from their blood for Defendants' manufacturing process. *Marsh* distinguished *Vo* from the plasma seller relationship finding that it is "quite unlike the relationship in *Vo*." As *CSL* explained, "here the plasma donor sells plasma to CSL and receives only money in return, not any kind of health service. *Vo* is not on point….The exception does not apply."[7]

In fact, when *Vo*'s reasoning is applied, it offers yet another basis for denying the Motion to Dismiss here. *Vo*, in analyzing the HIPAA exemption (something not at issue in this case, because Defendant is not subject to HIPAA as it is not a healthcare provider), applied HIPAA's definition of "heath care". If that definition is applied in this case, it demonstrates why selling plasma cannot possibly be "health care" of a "patient" under any definition or stretch of the imagination. HIPAA defines "health care" as "care, services, or supplies related to the health of an individual." 45 C.F.R. §103. While "assessment" is listed as an example of such health care, that assessment must of course relate to the "care, services, or supplies related to the health of an individual.". *See*, *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 845 (N.D. Ill. 2021)("The court reads the phrase "for health care treatment ... under [HIPAA]" to mean biometric information 'collected by a HIPAA covered entity for the purpose of health care treatment, payment, or operations.'"). As such, because the patient in a healthcare setting exemption does not apply, the Defendants' Motion should be denied.

**B. The Defendants Reliance Upon "information collected, used or stored for health care treatment" Under HIPPA Is Misplaced.**

---

[7] Furthermore, *Vo* relied upon section 160.103 of the Code of Federal Regulations, which defines health information as "any information,[ ... ], that: (1) Is created or received by a health care provider [ ... ], employer,[ ... ]; and (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past present, or future payment for the provision of health care to an individual." 45 C.F.R. § 160.103. The definition includes information created by a "health provider," which Defendants admit they are not.

Relatedly, the Defendants argue (Motion, p. 14) that biometric data is excluded from BIPA's scope under the exclusion for "information collected, used or stored for health care treatment" under HIPPA. See 740 ILCS 14/10. To make their point, they cite to their own Internet site for the argument that the plasma they purchase is apparently resold to pharmaceutical companies to make medicine. These, and the other extraneous facts, are not in the Amended Complaints and must be disregarded on a motion to dismiss. *See, Thomas by & through Phillips v. Illinois Dep't of Human Services*, 2021 WL 4439417, at *2 (N.D. Ill. Sept. 28, 2021).

If substantively considered however, as demonstrated above, the Defendants do not provide healthcare treatment. The common-sense understanding and dictionary definitions discussed above are consistent with the U.S. Department of Health and Human Services ("HHS") which found that plasma donation centers were not subject to HIPPA compliance because they are not healthcare providers. *See* Standards for Privacy of Individually Identifiable Health Information, 65 Fed. Reg. 82,477 (Dec. 28, 2000)(emphasis added)("[T]he procurement or banking of ... blood ... or any other tissue or human product ***is not considered to be health care under this rule and the organizations that perform such activities would not be considered health care providers***[.]"). In fact, HHS has exempted plasma centers from the standards for privacy of identifiable health care information specifically because these centers *do not* provide "health care" and do not see "patients". *Cf.* 65 Fed.Reg. 82,572. As HHS explains:

> "Comment: Some commenters suggested that blood centers and plasma donor centers that collect and distribute source plasma not be considered covered health care providers because the centers ***do not provide "health care services"*** and the blood ***donors are not "patients" seeking health care***. Similarly, commenters expressed concern that organ procurement organizations might be considered health care providers.
>
> Response: ***We agree*** and have deleted from the definition of "health care" the term "procurement or banking of blood, sperm, organs, or any other tissue for administration to patients."[8]

---

[8] https://www.ihs.gov/sites/privacyact/themes/responsive2017/display_objects/documents/PvcFR03.pdf

See, Standards for Privacy of Individually Identifiable Health Information, 65 FR 82462-01[9]

    *Mosby v. Ingalls Mem'l Hosp.*, 2022 IL App (1st) 200822, ¶ 39 is illustrative.   In *Mosby*, hospital nurses had to scan fingerprints to access a medication dispensing system.   The hospital defendants argued the scanning of the biometric information was for "health care" and "treatment", but the Court rejected this argument because the information was not collected from patients or protected "under HIPPA".  *Id. ¶ 44.*  Here, as explained above, the Plaintiffs are not patients (Defendants admit this on Exhibit A)--and the Defendants acknowledge in footnote 12 of their Motion to Dismiss that unlike a hospital, they are not even covered by HIPPA.

    What the Defendants effectively is arguing is that any biometric information provided in any manner in the healthcare field is exempt even though *Mosby* says otherwise.  But, that of course is not the law and there must be a *connection* between the collection of a biometric template *with* the healthcare treatment.  *See, Crumpton,* 513 F. Supp. 3d at 1015 (striking HIPPA/healthcare BIPA affirmative defense because it "inadequately pleads a connection between collecting a biometric template" and how that template is used for treatment).   As such, biometric claims are routinely allowed in the heath-care industry. *See, Peaks-Smith vs. St. Anthony Hospital*, 2018 CH 2077 (Transcript of Proceedings, Exhibit E at p. 26) (Cir. Ct. Cook Cty. Jan  7, 2020) (J. Gamrath)(in denying hospital's motion to dismiss brought that used a biometric device --for medication disbursement, fraud prevention, and timekeeping--the court

---

[9] Furthermore, HHS explains that: "Comment: One commenter asked that we revise the definition to explicitly exclude plasmapheresis from paragraph (3) of the definition. It was explained that plasmapheresis centers do not have direct access to health care recipients or their health information, and that the limited health information collected about plasma donors is not used to provide health care services as indicated by the definition of health care. Response: We address the commenters' concerns by removing the provision related to procurement and banking of human products from the definition."    Standards for Privacy of Individually Identifiable Health Information, 65 FR 82462-01.  See also, 65 Fed. Reg.at 82,572 (HHS removing provision governing "procurement and banking of human products").

explained BIPA was not intended to exempt health care service providers); *Bruhn v. New Albertson's Inc.,* No. 18-CH-01737 (Cir. Ct. Cook Cty. July 2, 2019) (J. Loftus)(Exhibit F Transcript of Proceedings at p. 53)(denying motion to dismiss in claim brought by pharmacist who was required to scan fingerprint to access pharmacy computer system and noting that: "[t]o read the exception as Defendants set forth is nonsensical, in this court's opinion, essentially that Defendants argue a blanket exemption for doctors, nurses, physical therapists, CNA's, ultrasound technicians, anyone subject to HIPAA who uses biometric information to access medical records or billing records or hospital records. These large categories of workers cannot look to BIPA to protect their privacy. If the General Assembly intended to exempt BIPA for anyone subject to HIPAA, the legislature would have said so.); *Thurman v. Northshore University Health System*, 2018 CH 3544 (Cir. Ct. Cook Cty. Dec. 12, 2019) (J. Valderrama) (rejecting Defendants hospital's argument that case had to be dismissed under BIPA's health care exception because the device at issue used as "an authorization method to allow access to stored materials and certain restricted areas" at Evanston Hospital). (Exhibit G p. 9). The argument here is even stronger here: while hospitals and pharmacies may interact with patients in a healthcare setting, Defendants admit they provide no health services.

In *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 844 (N.D. Ill. 2021), the court noted that if the legislature had intended to grant some sweeping, categorical exemption to a particular industry in BIPA, it clearly knew how as shown by other provisions which *do* provide categorical exemptions. For example, the exemption for financial institutions explicitly provides that, "[n]othing in this act shall be deemed to apply ***in any manner*** to a financial institution . . . that is subject to Title V of the federal Gramm-Leach-Bliley Act of 1999 and the rules promulgated there under." 740 ILCS 14/25(c) (emphasis added). Under this exemption, all banks subject to

16

Title V of the Gramm-Leach-Bliley Act are exempt from BIPA. However, unlike the banking exemption, "the legislature did not include a provision explicitly stating that BIPA shall not be construed to apply to a health care provider" 524 F. Supp. 3d at 844 let alone a plasma purchasing company. The Defendant's reliance on a Will County transcript in *Diaz v. Silver Cross Hosp. & Med. Ctrs.*, No. 2018 CH 001327 (Cir. Ct. Will Cnty. Aug. 29, 2019) is unpersuasive. As Judge Pallmeyer found, regardless of how persuasive its reasoning was (she pointed out it conflicted with four other courts), it is distinguishable because it only applies to hospitals. *Id.* at 845.

Nowhere does BIPA state, for example, that "nothing in this act shall be deemed to apply in any manner to facilities that have medical professionals working at them." BIPA does not flatly exempt all plasma buyers like it exempts all Title V banks. The legislature's restraint is reasonable, given that it clearly did not intend for all health care facilities – including, but not limited to, hospitals, pharmacies, insurance companies, nursing homes, etc.– to be exempt from BIPA's prophylactic security measures. If the Legislature intended to create such a broad BIPA exemption, it would have said so. *Cf. In re Jaffe*, 932 F.3d 602, 606 (7th Cir. 2019). Therefore, the Motion to Dismiss must be denied for seven reasons discussed above.

## C. Finger Scans Do Not "Validate Scientific Testing or Screening"

Defendants argue that the data it collects is exempt from BIPA's definition of "biometric identifier[s]." 740 ILCS 14/10. The exemption reads: "Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening." 740 ILCS 14/10 (emphasis added). Defendants' collection of biometric identifiers *to identify its donors* does not "further validate scientific testing or screening" because it makes no claim to be doing any "testing" using biometric

17

data at all. The biometric scan itself is not of course used for scientific testing of screening. *See, Crumpton*, 513 F. Supp. 3d at 1017 (N.D. Ill. 2021)(striking affirmative defense because it "does not allege the biometric identifiers themselves are integral to screening or testing the donor or their plasma or blood for any condition or disease. Moreover, validating donor identity is not the same as validating the underlying testing or screening.")

Defendants may argue that it is "screening" its donors, in that it uses biometric data to identify them, but that interpretation would swallow the law and exempt even the most common BIPA cases. The term "screening" is undefined in BIPA. "Screen" has two potentially relevant meanings—only one applies. *See County Of Cook v. Illinois Labor Relations Bd. Local Panel*, 347 Ill. App. 3d 538, 547, 807 N.E.2d 613, 621 (2004) ("If the language of the statute permits two constructions, one of which would render the provision absurd ... and the other of which would render the provision reasonable ... the former construction must be avoided."). The correct meaning is "to test or examine for the presence of something (such as a disease)[.]" (Merriam Webster, "Screen[,]" Entry 2(3)(b)(3). This is the only interpretation that makes sense given the language of the exemption as a whole: mammograms, X-rays, MRIs, and the like, are used in relation to evaluative or diagnostic screening, i.e., the assessment of a specific portion of the human anatomy for the detection of a disease in the same body part.[10] These processes are each used to locate and diagnose diseases, which is why they are included in this BIPA exemption generally concerned with the provision of health care services. Which brings us to the wrong meaning of "screen"— the one Defendants will advocate for—which is "to make a separation into different groups[.]" (Merriam Webster, "Screen[,]" Entry 2(3)(b)(1). This meaning is not related to the

---

[10] See *Ctr. Video Indus. Co. v. Roadway Package Sys., Inc*., 90 F.3d 185, 187 (7th Cir. 1996) ("[W]here a general term follows a series of specific terms, the former ... extends only to matters of the same general class or nature as the terms ... enumerated.")

foregoing terms of the exemption and would not make sense in the context of the entire provision, which is concerned with the collection of biometric data to provide health care services. *See Fuesting v. Uline, Inc*., 30 F. Supp. 3d 739, 742 (N.D. Ill. 2014) (language should "not be considered in isolation, but, instead, must be read in context"). This is why courts use the noscitur a sociis canon of construction, as adopting the incorrect, different-groups definition of "screen" would exempt some of the clearest BIPA cases and re-write the statute. For example:

> • A company that uses fingerprint scanners to facilitate consumer transactions would be exempt, because it uses "scientific ... screening" to screen for consumers who have financial accounts linked with their biometric data versus those who do not. See 740 ILCS 14/5(a)-(c); 95th Ill. Gen. Assem., House Proceedings, May 30, 2008, at 249 (statement of Rep. Ryg) (describing Pay By Touch bankruptcy that led to passage of BIPA).

> • An employer requiring employees to provide fingerprints to clock into work would be exempt, because it uses biometrics to screen for the correct employee's identity. *Compare with Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 615 (N.D. Ill. 2019) (dismissing BIPA claim for damages, but holding employee stated BIPA claim against employer who required fingerprint scanning to obtain access to facilities); *Treadwell v. Power Sols. Int'l, Inc*., 427 F. Supp. 3d 984, 987 (N.D. Ill. 2019) (same, but fingerprint scanning used for timekeeping).

If the Legislature intended to create such a broad BIPA exemption encompassing both meanings of "screening[,]" it would have said so. *Cf. In re Jaffe*, 932 F.3d 602, 606 (7th Cir. 2019) ("[I]f the Illinois legislature wanted to exempt particular interests from the attachment of judgment liens, it had no problem in doing so.") Instead, the Legislature used "screening" at the end of a series of procedures used for evaluative and diagnostic health care. The alternate definition is unworkable and inconsistent with the terms of the exemption, in context. It also is inconsistent with the requirement "statutory interpretation that exemptions from a statute that creates remedies should be construed narrowly". *Yi v. Sterling Collision Centers, Inc.,* 480 F.3d 505, 508 (7th Cir. 2007); *Rosenbach*, 2019 IL 123186 at ¶ 36 (observing that the legislature's goal was to provide

large-scale protection for *all individuals* who have their biometric identifiers and information collected in Illinois).

## IV. Plaintiffs' Claims are Timely.

*Tims* v. *Blackhorse Carriers, Inc.,* 2021 IL App (1st) 200563 held that a five-year statute of limitations applies to actions under sections 15(a), (b), and (e) of BIPA. It also found that under separate sections of BIPA, a shorter limitations period can apply but because "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims" it is appropriate to allow the claims here to proceed. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). *See also, Martinez v. Ralph Lauren Corp., Inc.*, 1:21-CV-01181, 2022 WL 900019, at *7 (N.D. Ill. Mar. 27, 2022)(declining to depart from *Tims*); *Bradenberg v. Meridian Senior Living, LLC*, 564 F. Supp. 3d 627, 633 (C.D. Ill. 2021)("the five-year 'catch all' must apply to BIPA violations, and numerous Illinois courts—both state and federal—have so held", collecting cases); *Burlinski v. Top Golf USA Inc.*, 19-CV-06700, 2020 WL 5253150, at *8 (N.D. Ill. Sept. 3, 2020)("the catch-all five-year statute of limitations applies to the BIPA claims").[11] In the current BIPA climate, this

---

[11] Virtually all state court judges have also found a 5 year statute of limitations applies. For the sake of brevity, Plaintiffs will only provide copies of these additional opinions upon request. *See McGinnis v. United States Cold Storage, Inc.,* 19 L 9, at 3 (Cir. Ct. Will Cty. Nov. 4, 2020); *Mazya v. Northwestern,* 18 CH 07161, at 4 (Cir. Ct. Cook Cty., Nov. 2, 2020); *Hunter v. J.S.T.* Corporation, 19 CH 929 (Cir. Ct. Lake Cty., June 24, 2002); *Owens v. Wendy's International*, LLC, 18 CH 11423, pp. 4-6 (Cir. Ct. Cook Cty, June 8, 2020); *Young v. Tri City Foods,* 18 CH 13114, at 1 (Cir. Ct. Cook Cty., June 8, 2020); *Wells v. Relish Labs*, 19 CH 00987 (June 8, 2020); *Smith v. Top Die,* 2019 L 248 (Winnebago Cty, March 12, 2020) (Rule 308 motion denied); *Marion v. Ring Container*, 19 L 89, at 2 (Cir. Ct. Kankakee Cty. Jan. 24, 2020) (appeal pending); *Figueroa v. Tony's Finer Foods,* 18 CH 15728, at 3-5 (Cir. Ct. Cook Cty., Dec. 10, 2019); *Slater v. H&M*, 2018 CH 16030, at 52 (Cir. Ct. Cook Cty., Nov. 21, 2019); *Woodard v. Dylan's Candybar LLC*, 19 CH 05158, at 10-14 (Cir. Ct. Cook Cty. Nov. 20, 2019); *Cortez v. Headly Mfg. Co.*, 19 CH 4935, at 2-7 (Cir. Ct. Cook Cty. Nov. 20, 2019); *Carrasco v. Freudenberg Household Prods., LP*, 19 L 279, at 2 (Cir. Ct. Kane Cty. Nov. 15, 2019); *Troop v. Parco, Ltd.*, 19-L-81 (Peoria County); *Roach v. Wal-Mart*, 2019 CH 1107, at 4 (Cir. Ct. Cook Cty. Oct. 25, 2019); *Soltysik v. Parsec, Inc.*, 19 L 136, at 34-36 (Cir. Ct. DuPage Cty. Oct. 17, 2019); *Tims v. Black Horse Carriers, Inc.*, No. 2019 CH 03522, at 2-3 (Cir. Ct. Cook Cty. Sep. 23, 2019) (appeal pending;); *Chavez v. Temperature Equipment Corp*, No. 2019 CH 2538, at 6-10 (Cir. Ct. Cook Cty., Ill. Sep. 11, 2019).

Court may fairly observe the well-reasoned opinions of other trial courts. *People ex rel. Webb v. Wortham,* 2018 IL App (2d) 170445, ¶ 27.

> ### A. The one-year period of 735 ILCS 5/13-201 does not apply because Plaintiffs do not allege publication and publication is not an element of Plaintiffs' claims.

Defendants argue that the one-year statute of limitations for privacy torts involving publication applies under 735 ILCS 5/13-201. Section 13-201 provides that the one-year statute of limitations governs *only* "libel, slander and privacy torts *involving publication*." *Benitez v. KFC Nat. Mgmt. Co.*, 305 Ill. App. 3d 1027, 1034 (1999) (emphasis added) (refusing to apply one-year limitations period for privacy tort of intrusion upon seclusion). By its express terms, section 13-201 applies only to claims involving "publication," which Plaintiffs do not and need not allege. Black's Law Dictionary defines "publication" as "the act of declaring or announcing *to the public*." *Black's Law Dictionary* (10th ed. 2014) (emphasis added); *see also Miller v. Motorola*, 202 Ill. App. 3d 976, 980 (Ill. App. 1st Dist. 1990) (in the context of privacy tort for publication of private facts, publication is disclosure to public, enough individuals where the information is likely to become public, or to individuals with a special relationship to plaintiff). Plaintiffs' first two claims are for unlawful *collection* and *possession* of his biometric data. SAC ¶¶ 47-65; 740 ILCS 14/15(a) and (b). This shows that "publication" is not an element of Plaintiffs' BIPA claims. *See Meegan*, 2020 WL 3000281, at *2-*3 ("BIPA subsections (a) and (b) do not have a publication element, so § 13-201 [the one-year limitations period for certain privacy claims] cannot provide the statute of limitations for subsections (a) or (b)").

> ### B. The Two-year Period of 735 ILCS 5/13-202 for Personal Injury Torts Does Not Apply.

Defendants are equally mistaken in claiming that the two-year limitations period for personal injury torts applies. "The two year limitations period in section 13–202 applies where

plaintiff has suffered *direct* physical or mental injury." *People ex rel. Ill. Dep't of Labor v. Tri State Tours, Inc*., 342 Ill. App. 3d 842, 848, 795 N.E.2d 990, 995 (2003) (emphasis added) (declining to apply 13-202 to a claim brought under the State Wage and Collection Act). In this case, Plaintiffs "ha[ve] alleged no direct physical or mental injury and therefore section 13-202 is inapplicable." *Id.* Illinois trial courts have uniformly found that the five-year statute of limitations applies and, where raised, have rejected the two-year statute of limitations under section 13-202.[12]

Plaintiffs do not allege that Defendants injured them physically or emotionally. Instead, they allege that Defendants violated their statutory rights under BIPA. These statutory rights grant individuals the right to control the circumstances under which companies obtain, possess, and disclose their biometric data. *Rosenbach*, 2019 IL 123186, ¶ 34. There is no credible argument that violation of this right of control constitutes an "injury to the person." 735 ILCS 5/13-202. *See Burlinski,* 2020 WL 5253150, at *7 ("Defendant "fails to explain why an alleged violation of purely statutory rights under BIPA – which is meant to give the Plaintiffs some degree of control over the collection and disclosure of their biometric data – should count as an 'injury to the person' as that phrase is used in 735 ILCS 5/13-202.").

### C. Timeliness Cannot Be Resolved On A Motion To Dismiss Here.

Whether Plaintiffs' claims are timely will turn on when they stopped donating and when their data was deleted. These dates cannot be addressed on a motion to dismiss, they are not apparent from the complaint, and they must be addressed by an affirmative defense. *See, Vasquez v. Indiana Univ. Health,* No. 21-3109 (7th Cir. Apr. 8, 2022).

---

[12]    State and federal courts have unanimously rejected that the two-year statute of limitations for personal injury claims applies to BIPA claims. *See Woodard v. Dylan's Candybar, LLC*, 19 CH 05158, at 14 (Cir. Ct. Cook. Cty., Nov. 20, 2019); *Slater*, 2018 CH 16030, at 52; *Owens, LLC*, 18 CH 11423, at 24 ("BIPA certainly does not present a personal injury."); *McGinnis*, 19 L 9, at 3. Plaintiffs will provide copies of these opinions upon request.

### V. State of Mind Allegations Are Irrelevant to Evaluating the Pleading Sufficiency of BIPA Claims, But In Any Event, Are Sufficient Pled.

Defendants argue that Plaintiffs' claims are barred because they did not adequately plead recklessness. But Defendant is mistaken because federal pleadings standards do not permit dismissal of parts of claims, and BIPA does not require factual allegations showing the defendant's state of mind to properly allege BIPA claims under Section 15.

Under governing Seventh Circuity authority, "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims[.]" *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Rather, the question at the pleadings stage "is simply whether the complaint includes factual allegations that state a plausible claim for relief." *Id.* As significant, the Illinois Supreme Court has made clear that a person is "aggrieved" and may pursue a cause of action where she alleges that a private entity, like Defendants, violate any of their rights in BIPA Section 15. *Rosenbach*, 2019 IL 123186, ¶ 33. Critically, only after Plaintiffs qualify as a "prevailing party" is it necessary to determine whether Defendants' BIPA violations were "negligent" or "reckless" for damages purposes. 740 ILCS 14/20(1)-(2).

In light of this standard, one court in the central district of Illinois concluded that "a BIPA plaintiff need not plead facts showing the defendant's mental state to state a claim for relief." *Snider*, 2020 WL 4880163, at *5 (Darrow, C.J.). In reaching this conclusion, the *Snider* court relied on Judge Tharp's opinion in *Cothron v White Castle System, Inc.*, 467 F.Supp.3d 604 (N.D. Ill. 2020), 2020 WL 3250706, at *5, which reasoned that because a BIPA plaintiff may prevail and obtain attorney's fees, costs, and injunctive relief without establishing negligence or recklessness, there is no requirement to plead facts establishing entitlement to liquidated damages within the same claim for relief. *Id.* ("[Plaintiff's] complaint states a plausible claim for relief under sections

15(b) and 15(d); Rule 12(b)(6) does not require her to plead the facts that will determine the amount of actual damages she may be entitled to recover").[13]

And even if Plaintiff were required to plead negligence or recklessness (they do not), they has done so. BIPA was enacted in 2008 and the Defendant violated it for more than a decade after BIPA was enacted, which independently supports an inference of negligence and recklessness. *See Rogers v. BNSF Railway Co*., 2019 WL 5635180, at *2 (N.D. Ill. Oct. 31, 2019) ("[T]he BIPA took effect more than ten years ago, and if the allegations of [the] complaint are true—as the Court must assume at this stage— [Defendant] made no effort to comply with its requirements. This is certainly enough, at the pleading stage, to make a claim of negligence or recklessness plausible"); *Figueroa v. Kronos Inc*., 2020 WL 1848206, at *8 (N.D. Ill. Apr. 13, 2020) (same); *Marsh v. CSL Plasma Inc*., 503 F. Supp. 3d 677, 685–86 (N.D. Ill. 2020) (same). Accordingly, state of mind allegations are irrelevant to examining the pleading sufficiency of a BIPA claim and they nevertheless have alleged plausible claims for relief.

## VI.    CONCLUSION

Wherefore, Plaintiffs request that the Court deny the Plaintiffs' Motion to Dismiss.

Dated: July 13, 2022                            Respectfully Submitted:

By: */s/ David Fish*
David Fish
Mara A. Baltabols
**Fish Potter Bolanos PC**
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563


COUNSEL FOR THE PLAINTIFFS AND THE PUTATIVE CLASS

---

[13] *Bradenberg*, 2021 WL 4494275, at *5–6 (explaining the remedies in BIPA Section 14/20 are "just that: a menu of *remedies*"; "other Illinois federal courts have held that plaintiffs need not plead either negligence, intentionality, or recklessness in a BIPA claim to survive a motion to dismiss") (emphasis in original).

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that a true and correct copy of the foregoing was served via ECM/CF filing system on July 13, 2022 to all counsel of record.


<u>/s/*David Fish*</u>
David Fish