**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BRIAN R. VAUGHAN, JASON DARNELL, FEBBIE MINNIEFIELD, and ADRIEL VEGA, individually and on behalf of all others similarly situated,** | ) ) ) ) ) | |
| ***Plaintiffs,*** | ) ) | **Case No.:  20-cv-04241** |
| **v.** | ) ) | **Honorable Marvin E. Aspen** |
| **BIOMAT USA, INC., TALECRIS PLASMA RESOURCES, INC., and INTERSTATE BLOOD BANK, INC.,** | ) ) ) ) | **Magistrate Judge Jeffrey Cole** |
| ***Defendants.*** | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... iii

I.     PLAINTIFFS' CLAIMS ARE PREEMPTED UNDER THE DOCTRINE OF CONFLICT
       PREEMPTION ................................................................................................. 2

II.    PLAINTIFFS CANNOT STATE A SECTION 15(b) CLAIM AGAINST BIOMAT OR
       TPR ............................................................................................................. 9

III.   PLAINTIFFS CANNOT REFUTE THAT THE ALLEGED BIOMETRIC IDENTIFIERS
       COLLECTED ARE EXEMPT UNDER THE BIPA'S HEALTH CARE EXCEPTION 13

       A.   Plaintiffs cannot refute that their claims fall under BIPA's exception for information
       collected from a patient in a health care setting..................................................... 14

       B.   Plaintiffs cannot refute that their claims fall under BIPA's exemption for information
       collected for health care treatment. ...................................................................... 16

IV.    PLAINTIFFS CANNOT REFUTE THAT THE ALLEGED BIOMETRIC IDENTIFIERS
       AND INFORMATION ARE USED TO VALIDATE SCIENTIFIC TESTING OR
       SCREENING ................................................................................................... 18

V.     PLAINTIFFS FAIL TO REFUTE THAT THEIR CLAIMS ARE UNTIMELY.............. 19

       A.   Vaughan and Darnell's Claims Are Time-Barred by the One-Year Statute of
       Limitations Set Forth in 735 ILCS 5/13-201. ......................................................... 20

       B.   Vaughan's Claims Are Alternatively Barred by the Two-Year Statute of Limitations
       Set Forth in 735 ILCS 5/13-202........................................................................... 21

VI.    PLAINTIFFS' OPPOSITION FAILS TO IDENTIFY ANY SUPPORT FOR THEIR
       CONCLUSORY ALLEGATION THAT DEFENDANTS RECKLESSLY OR
       WILLFULLY VIOLATED THE BIPA..................................................................... 22

CONCLUSION....................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Arnold v. Janssen Pharmaceutica,*
    215 F. Supp. 2d 951 (N.D. Ill. 2002) .......................................................................21

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .....................................................................................................1, 22

*BBL, Inc. v. City of Angola,*
    809 F.3d 317 (7th Cir. 2015) ......................................................................................11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) .....................................................................................................1, 22

*Bradenberg v. Meridian Senior Living, LLC,*
    564 F. Supp. 3d 627 (C.D. Ill. 2021) .........................................................................13

*Brownmark Films, LLC v. Comedy Partners,*
    682 F.3d 687 (7th Cir. 2012) ......................................................................................10

*Cothron v. White Castle Sys.,*
    467 F. Supp. 3d 604 (N.D. Ill. 2020) .........................................................................10, 11

*Crumpton v. Octapharma Plasma, Inc.,*
    513 F. Supp. 3d 1006 (N.D. Ill. 2021) .......................................................................3, 5

*Daugherty v. Univ. of Chi.,*
    No. 17 C 3736, 2017 U.S. Dist. LEXIS 155948 (N.D. Ill. Sept. 22, 2017) .............7

*Diaz v. Chandler,*
    No. 14 C 50047, 2016 U.S. Dist. LEXIS 35450 (N.D. Ill. Mar. 18, 2016) .............7

*EEOC v. Concentra Health Servs., Inc.,*
    496 F.3d 773 (7th Cir. 2007) ......................................................................................22

*Florida Lime & Avocado Growers, Inc. v. Paul,*
    373 U.S. 132 (1963) .....................................................................................................2, 3, 9

*Fleury v. Union Pac. R.R. Co.,*
    528 F. Supp. 3d 885 (N.D. Ill. 2021) .........................................................................4, 13

*Gakuba v. Schafer,*
    2015 IL App (2d) 141157-U ........................................................................................22

*H.K. v. Google LLC*,
No. 1:21-cv-01122-SLD-JEH, 2022 U.S. Dist. LEXIS 91373
(C.D. Ill. Mar. 31, 2022) ........................................................................................4

*Heard v. Becton, Dickinson & Co.*,
524 F. Supp. 3d 831 (N.D. Ill. 2021) ...................................................................17

*Hernandez v. Cook Cty. Sheriff's Office*,
634 F.3d 906 (7th Cir. 2011) ................................................................................20

*IBM v. Priceline Grp., Inc.*,
No. 15-137-LPS-CJB, 2017 U.S. Dist. LEXIS 54285 (D. Del. Apr. 10, 2017) ....................11

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
610 F.3d 382 (7th Cir. 2010) ........................................................................... i, 20

*Karling v. Samsara Inc.*,
No. 22 C 295, 2022 U.S. Dist. LEXIS 121318 (N.D. Ill. July 11, 2022) .................................4

*Kaufmann v. Schroeder*,
241 Ill. 2d 194 (2011) ...........................................................................................15

*Krok v. Burns & Wilcox, Ltd.*,
No. 98 C 5902, 1999 U.S. Dist. LEXIS 6095 (N.D. Ill. Apr. 16, 1999).................................6

*Kroog v. Mait*,
712 F.2d 1148 (7th Cir. 1983) ............................................................................3, 9

*Marsh v. CSL Plasma, Inc.*,
503 F. Supp. 3d 677 (N.D. Ill. 2020) ........................................................3, 4, 5, 15

*Metz v. Joe Rizza Imps., Inc.*,
700 F. Supp. 2d 983 (N.D. Ill. 2010) .....................................................................6

*Mutual Pharm. Co. v. Bartlett*,
570 U.S. 472 (2013)............................................................................................3, 8

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D. Ill. 2019) ...................................................................23

*New York SMSA Ltd. P'ship v. Town of Clarkstown*,
612 F.3d 97 (2d Cir. 2010)......................................................................................8

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
461 U.S. 190 (1983)................................................................................................9

*Parangao v. Community Health Syst., Inc.*,
858 F.3d 452 (7th Cir. 2017) ................................................................................20

*Pavlik v. Kornhaber*,
  326 Ill. App. 3d 731 (1st Dist. 2001) .......................................................................21

*People ex rel. Ill. DOL v. Tri State Tours, Inc.*,
  342 Ill. App. 3d 842 (2003) ......................................................................................22

*Pippen v. NBCUniversal Media, LLC*,
  734 F.3d 610 (7th Cir. 2013) ....................................................................................22

*PLIVA, Inc. v. Mensing*,
  564 U.S. 604 (2011).....................................................................................................3

*Rogers v. BNSF Ry. Co.*,
  No. 19 C 3083, 2022 U.S. Dist. LEXIS 45578 (N.D. Ill. Mar. 15, 2022) .................4

*Rogers v. CSX Intermodal Terminals, Inc.*,
  409 F. Supp. 3d 612 (N.D. Ill. 2019) ........................................................................23

*Sekura v. Krishna Schaumburg Tan, Inc.*,
  2018 IL App (1st) 180175...........................................................................................21

*Tims v. Blackhorse Carriers*,
  2021 IL App (1st) 200563...........................................................................................21

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
  987 F.2d 429 (7th Cir. 1993) ....................................................................................10

*Vo v. VSP Retail Dev. Holding, Inc.*,
  2020 U.S. Dist. LEXIS 53916 (N.D. Ill. March 25, 2020)........................14, 15, 16

*West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*,
  2021 IL 125978, ¶ 46 ................................................................................................20

**Statutes**

735 ILCS 5/13-201 ..................................................................................................1, 20, 21

735 ILCS 5/13-202 ........................................................................................................1, 21

740 ILCS 14/10.........................................................................................................16, 17, 18

740 ILCS 14/15(a) ..............................................................................................................1

740 ILCS 14/15(b) ..............................................................................................................9

**Rules**

Fed. R. Evid. 407 ................................................................................................................7

Fed R. Civ. P. 12(b)(6)..............................................................................................6, 10

**Other Authorities**

21 C.F.R. § 606.160 ........................................................................................... 1, 3, 5

21 C.F.R. § 630.10 .................................................................................................19

80 Fed. Reg. 29842 (May 22, 2015) ......................................................................7, 8

As Defendants demonstrated in their Memorandum of Law in Support of Their Motion to Dismiss (Dkt. No. 80) ("Motion" or "Mot."), Plaintiffs' allegations that Defendants' use of finger-scanning devices to screen individuals donating plasma violated the Illinois Biometric Information Privacy Act ("BIPA") fail on numerous grounds. Plaintiffs' Opposition to Defendants' Motion ("Opposition" or "Opp.") does nothing to cure the inherent deficiencies in their claims and cannot save them from dismissal.

*First*, Plaintiffs cannot avoid the conflict between the BIPA's requirements and Defendants' obligations under federal law and regulations; their claims are preempted as a result.

*Second*, Plaintiffs' Opposition fails to refute that Plaintiffs consented, in writing, to the collection of their biometric information.

*Third*, Plaintiffs fail to rebut that the alleged biometric data at issue,[1] collected as part of the plasmapheresis screening process and for the purpose of facilitating plasma donations and health care treatment, is expressly exempted from the BIPA's scope under either the BIPA's health care exceptions and the exception for images used to validate scientific testing or screening.

*Fourth*, Plaintiffs cannot refute the fact that their own allegations establish that Vaughan and Darnell's claims are time-barred pursuant to 735 ILCS 5/13-201 or, alternatively, that Vaughan's claims are time-barred by 735 ILCS 5/13-202.

*Finally*, Plaintiffs fail to justify their failure to allege any facts to support their claims that Defendants acted recklessly or willfully. Plaintiffs' attempt to argue that their bare conclusions are sufficient is contrary to the Federal Rules and the pleading standards set forth in *Iqbal* and *Twombly*. Their claims for enhanced damages must be dismissed as a result.

---

[1] Plaintiffs' Complaint imprecisely uses the terms "biometrics" (e.g., SAC ¶¶ 34, 38, 81), "biometric data" (e.g.,¶ 35), and "biometric identifiers and information" (e.g., ¶¶ 82, 84).

1

## I.    PLAINTIFFS' CLAIMS ARE PREEMPTED UNDER THE DOCTRINE OF CONFLICT PREEMPTION

The parties agree that "[c]onflict preemption 'applies when federal and state law so directly conflict that it would be 'impossible' for a person or organization simultaneously to comply with both.'"  Opp. at 2 (citing authority). That is the precisely the scenario here. Under federal regulations promulgated by the FDA, product records for blood-derived products—which include a plasma donor's file—must be retained for at least 10 years. 21 C.F.R. § 606.160(d). In contrast, under the BIPA, biometric information *cannot* be retained for *more than* three years after an individual's last plasma donation. *See* 740 ILCS 14/15(a). The laws are fundamentally in conflict, and compliance with both is impossible. As such, Defendants face an impossible choice: comply with well-established federal regulations and risk non-compliance with the BIPA, or comply with the seemingly inapplicable BIPA and run afoul of federal regulations with potentially disastrous consequences to Defendants' nationwide operations.[2]

The position Defendants find themselves in is the very situation federal preemption is intended to address. The Supreme Court explained the doctrine of conflict preemption based on impossibility in *Florida Lime & Avocado Growers, Inc. v. Paul* using an analogous example of a hypothetical federal law forbidding the sale of avocados with more than 7% oil content and a state law forbidding the sale of avocados with less than 8% oil content. 373 U.S. 132, 143 (1963). In that example, the "inevitable collision between the two schemes of regulation" would make compliance with both impossible and the state law would be preempted. *Id*. The conflict here between a maximum three-year retention period for biometric data within the scope of BIPA and

---

[2]    As noted in Defendants' Motion, the BIPA also fundamentally conflicts with regulations set forth by the European Medicines Agency requiring that "facilities to which blood and blood components are delivered, including manufacturers, should retain traceability records for at least 30 years after the time of the donation." *See* Mot. at 6 n.6. Plaintiffs' Opposition makes no attempt to address this conflict.

a minimum ten-year retention period has the same result.

Courts routinely find preemption where, as here, there is a direct and irreconcilable conflict between federal and state mandates. *Kroog v. Mait*, 712 F.2d 1148, 1153 (7th Cir. 1983) is instructive. There, the Seventh Circuit found a "naked and irreconcilable conflict between a precise federal mandate to arbitrate and a state provision which prevents arbitration." *Id.* at 1154. Because the conflict was one "between two procedural mandates -- one that commands, and the other that prohibits," the Court concluded that "federal preemption . . . is automatic." *Id.* (reversing the district court's order denying defendant's motion to compel arbitration); *see also PLIVA, Inc. v. Mensing*, 564 U.S. 604, 618 (2011) (finding state tort claims preempted because any change that generic drug manufacturers made to the drug's labeling to comply with its duties arising under state tort law would have violated federal law); *Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472, 490 (2013) (finding preemption where "Federal law requires a very specific label . . . and state law forbids the use of that label").

In response, Plaintiffs point to two decisions rejecting plasma companies' BIPA preemption arguments. *See* Opp. at 3 (citing *Crumpton v. Octapharma Plasma, Inc.*, 513 F. Supp. 3d 1006, 1014 (N.D. Ill. 2021), and *Marsh v. CSL Plasma, Inc.*, 503 F. Supp. 3d 677, 685 (N.D. Ill. 2020)). Neither case, however, addresses the inherent conflict between the federal retention regulations set forth in 21 C.F.R. § 606.160 and the BIPA. Indeed, in both cases, the court rejected the defendants' preemption arguments because the defendants failed to identify any actual conflict that would make compliance with both the BIPA and federal regulation impossible. *See Crumpton*, 513 F. Supp. 3d at 1013 ("Octapharma points to **no federal statute or regulation** incompatible with simultaneous compliance with BIPA.") (emphasis added); *Marsh*, 503 F. Supp. 3d at 685 ("Here again CSL offers no statute or regulation that it cannot comply with at the same time it

complies with the Biometric Information Privacy Act."). Here, by contrast, Defendants identify a specific and irreconcilable conflict in the required retention periods that mandates preemption.

The other cases upon which Plaintiffs rely similarly fail to identify an *actual conflict* between federal law and the BIPA and are inapposite for that reason among others. *See* Opp. at 4. In *Karling v. Samsara Inc.*, No. 22 C 295, 2022 U.S. Dist. LEXIS 121318 (N.D. Ill. July 11, 2022), for example, the defendant "***does not*** argue that BIPA conflicts with a particular federal statute" and instead simply "urges the Court to find preemption based on a 'a uniform scheme of federal regulation of truck safety technology.'" *Id*. at *5-7 (emphasis added). Defendant in *Fleury v. Union Pac. R.R. Co.*, 528 F. Supp. 3d 885 (N.D. Ill. 2021) made a similar argument, claiming that plaintiff's BIPA claim was "categorically preempted because it amounts to regulation of [federally regulated] rail transportation" and not because of a clear conflict. *Id*. at 895; *see also Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2022 U.S. Dist. LEXIS 45578, at *11 (N.D. Ill. Mar. 15, 2022) (considering the unrelated question of whether "federal regulation . . . substantially subsumes BIPA's biometric privacy subject matter" and finding any conflict between federal law and the BIPA "hypothetical or theoretical"). That other courts have refused to find preemption based on a broad scheme of federal industry regulations, has no bearing on Defendants' argument here that a clear ***conflict*** between the retention requirements set forth in the FDA's regulations and the BIPA preempts Plaintiffs' claims.[3]

Plaintiffs attempt to side-step the clear conflict in retention requirements by arguing that federal regulations do not require retention of biometric data as part of the "individual product record." Opp. at 4. Plaintiffs' interpretation of what they characterize as a "regulatory puzzle" is

---

[3]     Plaintiffs also attempt to rely on *H.K. v. Google LLC*, No. 1:21-cv-01122-SLD-JEH, 2022 U.S. Dist. LEXIS 91373 (C.D. Ill. Mar. 31, 2022). In that opinion, the court held that plaintiff's claim ***was*** preempted by federal law based on an express preemption provision and dismissed plaintiff H.K.'s claim on that basis. *Id*. at *15-20.

4

unsupported and, to Defendants' knowledge, has never been adopted by any court.[4] *Id.* The law is clear that: (i) individual product records must be maintained for a minimum of 10 years; and (ii) "records shall be maintained that include, but are not limited to . . . donor records [and] . . . records to relate the donor with the unit number of each previous donation from that donor." 21 C.F.R. § 606.160(b), (d). Federal regulations further require, as Plaintiffs themselves acknowledge, that (i) plasma companies must establish a donor identification system that relates each donor to his or her blood; (ii) plasma companies must obtain proof of identity; and (iii) proof of identity records must be maintained. *See* Opp. at 4. In this case, the alleged biometric information is (i) captured as proof of identity and (ii) relates the donor to the collection, and must be maintained consistent with federal retention requirements. Nothing in the relevant federal regulations suggests that Defendants can comply by picking and choosing *some* donor-identification records to keep and declaring the rest not sufficiently "material" to maintain, as Plaintiffs suggest. *See* Opp. at 4-5.

Even if a court analyzing the issue were ultimately to agree with Plaintiffs' interpretation that the identity records generated from donors' finger scans are *not* covered by the FDA's retention requirement, there is no denying a conflict in the plain language of the regulations requiring retention of "donor records" and the retention requirements of the BIPA. In the absence of guidance from a court or formal clarification from the FDA resolving that conflict (neither of which has yet occurred), Defendants faced an impossible conflict. Plaintiffs' suggestion that Defendants – whose business is heavily regulated by the FDA – "unwind[] a small regulatory puzzle" (Opp. at 4) and conclude that the FDA's broad regulations *do not* apply ignores the risk

---

[4]     As noted above, neither *Marsh* nor *Crumpton* addressed the retention requirements set forth in 21 C.F.R. 606.160.

of misinterpretation. It is precisely this Catch-22 of a company being asked to reconcile two facially unreconcilable mandates that makes preemption appropriate.

Plaintiffs' argument that Defendants' current biometric retention policy undercuts their preemption argument is both improper and unpersuasive. First, Defendants' and other plasma companies' current biometric data retention policies cannot be considered in ruling on Defendants' motion to dismiss. Courts evaluating a Rule 12(b)(6) motion may generally consider only the plaintiff's complaint and documents attached to a motion to dismiss which are "referred to in the plaintiff's complaint and are central to his claim." *Metz v. Joe Rizza Imps., Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010). That limitation "logically extends to documents attached to a plaintiff's response" and prohibits consideration of attachments that are not central to plaintiff's claims. *Id.* (granting motion to strike attachments to plaintiff's response in opposition to defendant's motion to dismiss); *see also Krok v. Burns & Wilcox, Ltd.,* No. 98 C 5902, 1999 U.S. Dist. LEXIS 6095, at *17 (N.D. Ill. Apr. 16, 1999) (refusing to consider attachments to plaintiff's response to a motion to dismiss because they were not central to his claim).

Here, Defendants' policy is not only *not* central to Plaintiffs' claims (Plaintiffs allege that Defendants *lack* a biometric retention policy), but also irrelevant to the question of federal preemption for which it is being offered. Defendants' publication of a retention and destruction policy on their website mid-litigation is not evidence that a conflict does not exist. To the contrary, it reflects companies caught between two conflicting statutory obligations and trying to comply as best they can.[5]

---

[5] Defendants' current policy is also inadmissible under Fed. R. Evid. 407 to the extent Plaintiffs attempt to use it to establish negligence or culpable conduct.

6

Plaintiffs' assertion that the Court can simply take judicial notice of Defendants' policies ignores the threshold issue that the policies have no bearing on Plaintiffs' allegations or Defendants' preemption defense. Further, Plaintiffs' assertion is entirely unsupported. *See* Opp. at 3-4 (citing no authority). The Court's use of judicial notice on a motion to dismiss is a "narrow exception" that "merits the traditional caution it is given." *Daugherty v. Univ. of Chi.*, No. 17 C 3736, 2017 U.S. Dist. LEXIS 155948, at *13 (N.D. Ill. Sept. 22, 2017) and "even materials generally determined to be from reliable sources are not judicially noticeable." *Diaz v. Chandler*, No. 14 C 50047, 2016 U.S. Dist. LEXIS 35450, at *40 (N.D. Ill. Mar. 18, 2016). Absent *any* supporting authority, judicial notice of Defendants' policy is improper.

Plaintiffs next argue that Defendants could avoid the conflict between federal regulations and the BIPA by simply using an alternative method of identification. Opp. at 5. Plaintiffs' argument ignores that federal regulations specifically endorse "biometric means" as a useful means of establishing a donor's identity. 80 Fed. Reg. 29842, 29869 (May 22, 2015). Plaintiffs' suggestion that Defendants should have abandoned this efficient screening technology and reverted to a less reliable, less-advanced donor verification method with fewer safeguards contradicts the FDA's endorsement of biometrics as a viable identification method and express intent to "make the donor eligibility and testing requirements more consistent with current practices," "better assure the safety of the nation's blood supply," and provide "flexibility to accommodate advancing technology." 80 Fed. Reg. 29842.

The Supreme Court rejected a similar argument in *Bartlett*, where plaintiffs argued that federal preemption could be avoided by simply ceasing to manufacture the generic drug at issue. *Bartlett*, 570 U.S. at 488. The Court explained that so holding would make "impossibility preemption . . . all but meaningless" and expressly held that "an actor seeking to satisfy both his

7

federal- and state-law obligations is not required to cease acting altogether in order to avoid liability." *Id.* That holding applies here. The law does not require Defendants to cease their use of federally-approved technology to avoid an inherent conflict between federal and state-law requirements – *particularly* where doing so would frustrate the express goals of the FDA's regulations and, as discussed below, where the applicability of the BIPA to Defendants' operations is not apparent.

Ultimately, Plaintiffs' proposed "solution" to the inherent conflict between federal regulations and the BIPA only underscores the extent to which the BIPA impedes the FDA's intent. Plaintiffs argue that "the answer [to the conflict] is that Defendants may only choose the other options off the menu of the (entirely non-mandated) methods of identification." Opp. at 5. But that is no "answer"—rather, it demonstrates just how the frustration of federal intent bars Plaintiffs' claims as well. *See, e.g.*, *New York SMSA Ltd. P'ship v. Town of Clarkstown,* 612 F.3d 97, 106 (2d Cir. 2010) (holding that federal law preempted a local statute which explicitly establishes a 'preference' for certain wireless technology that interfered with Congress's goal of facilitating the spread of new technologies and the growth of wireless telephone service); *see* Mot. at 8.

Finally, Plaintiffs' arguments that the "touchstone of preemption analysis is the intent of Congress" and that their claims are only preempted to the extent the BIPA causes "major damage" to federal interests are misplaced. *See* Opp. at 1, 5-6. In fact, the Supreme Court has made clear on several occasions that "[a] holding of federal exclusion of state law is inescapable and requires ***no inquiry into congressional design*** where compliance with both federal and state regulations is a physical impossibility for one engaged in interstate commerce." *Fla. Lime & Avocado Growers*, 373 U.S. at 142 (emphasis added); *Pac. Gas & Elec. Co. v. State Energy Res. Conservation &*

*Dev. Comm'n*, 461 U.S. 190 (1983) ("state law is preempted to the extent that it actually conflicts with federal law"). If an "'actual conflict' is found, the inquiry is at an end." *Kroog*, 712 F.2d at 1152. "In short, the assessment of 'actual' or 'facial' conflict is a threshold inquiry we cannot escape; only if this inquiry is answered negatively can we entertain arguments as to the intent of Congress to occupy the field or preclude the kind of state regulation at issue." *Id*. Here, the impossibility of compliance with both federal regulations and the BIPA's requirements requires a finding that the BIPA is preempted and ends the analysis.[6]

## II.   PLAINTIFFS CANNOT STATE A SECTION 15(b) CLAIM AGAINST BIOMAT OR TPR

As Defendants established in their Motion to Dismiss, Plaintiffs' allegations that Biomat and TPR violated Section 15(b) cannot survive because the Plaintiffs alleged to have donated at those facilities received written information regarding the collection of any potential biometric identifiers or information and consented to the collection in writing, as the BIPA requires.

Plaintiffs attempt to distract from Defendants' documented evidence of compliance (to the extent compliance was necessary) with a series of unfounded procedural arguments. Plaintiffs claim, for instance, that the consent forms cannot be considered at the pleadings stage. The argument is contrary to well-established authority permitting consideration of documents that go to the basis of plaintiff's claim. *See, e.g., Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993); *see also* Mot. at 7-8 (citing authority). Plaintiffs ignore the extensive case law on this point and instead address a different issue altogether, that "courts should usually

---

[6]     Plaintiffs argue that even if conflict preemption applies, it would only preempt Plaintiffs' Section 15(a) claims. Opp. at 7. Plaintiffs are incorrect, as Section 15(b) incorporates Section 15(a) by requiring that a private entity "inform[] the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used." 740 ILCS 14/15(b). As such, the federal regulations conflict with both Sections 15(a) and 15(b) of the BIPA.

refrain from granting Rule 12(b)(6) motions on affirmative defenses." *See* Opp. at 8. As the case law Plaintiffs cite acknowledges, however, "when all relevant facts are presented, the court ***may*** properly dismiss a case before discovery[.]" *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). *Cothron v. White Castle Sys.*, 467 F. Supp. 3d 604, 614 (N.D. Ill. 2020) also does not support Plaintiffs' position as the court *did c*onsider plaintiff's consent form, but concluded that it did not amount to a waiver of the right to sue for past violations, a question unrelated to the issue here. *Id.* (concluding that "[n]othing in Ms. Cothron's . . . 2018 form indicates that Ms. Cothron knew she was waiving her right to bring suit").

Here, the Court has before it Plaintiffs Vaughan, Vega and Minniefield's signed consents, which unambiguously establish (i) that they knew they were providing potential biometric information during the donation screening process, (ii) understood the reason for it, and (iii) agreed to the collection, as required by Section 15(b). Thus, the Court should dismiss Plaintiff's Section 15(b) claims.

Plaintiffs' next argument that dismissal is improper because the Complaint does not include a separate count for a Section 15(b) claim is simply wrong. Plaintiffs' Complaint alleges violations of Sections 15(a) and (b) (SAC ¶¶ 83-84) and seeks monetary damages of $1,000 or $5,000 for *each* violation. That Plaintiffs chose to allege both claims as part of a single "count" for monetary damages is not a loophole to save a meritless claim from dismissal. The case law does not suggest otherwise. Indeed, the case upon which Plaintiffs rely, *BBL, Inc. v. City of Angola*, 809 F.3d 317 (7th Cir. 2015), addressed piecemeal dismissal of certain *elements* of a legal claim and not, as here, the dismissal of a distinct statutory violation. As another court analyzing *BBL* explained, "nothing in *BBL* expressly speaks to" the court's ability to address disparate theories separately, "despite

the fact that they are all lumped together" within a single claim. *IBM v. Priceline Grp., Inc.*, No. 15-137-LPS-CJB, 2017 U.S. Dist. LEXIS 54285, at *19 (D. Del. Apr. 10, 2017).[7]

Having failed to establish a procedural basis for ignoring Plaintiffs' consents, Plaintiffs attempt to argue that the consents are inadequate. Here again, Plaintiffs' claims are without merit. For instance, Plaintiffs claim that the written release was not an "informed written consent," without offering any explanation for that conclusion. *See* Opp. at 9. Plaintiffs executed a consent stating: I *understand and agree* that I will provide my fingerprint as biometric authentication of my identity as a part of the automated screening process." *Id*. Their consent was informed, written and unequivocal. Plaintiffs also argue that the consent fails to inform donors that their information was turned over a third party. Opp. at 8. Not only is that information not required under Section 15(b) of the statute, it is also not alleged in Plaintiffs' Complaint. Plaintiffs' attempt to fault Defendants for failing to disclose information which is both inaccurate and not subject to Section 15(b)'s requirement is evidence of Plaintiffs' grasping at straws.

Finally, the consents that courts have found to be insufficient in other cases are readily distinguishable and only underscore the adequacy of the consent here. For example, in *Christmas v. Landmark of Richton Park,* 20 CH 5439 (Oct. 22, 2021, Cir. Ct. Cook Cnty.), the defendants relied on (i) an electronic notice regarding BIPA that flashed upon the screen of the time clock, and (ii) an employee handbook containing a BIPA policy and a handbook acknowledgement in order to establish the plaintiff's consent. The court found the electronic notice insufficient because BIPA requires (i) a written release – which was not generated in connection with the notice, and (ii) a "opportunity to fully read and comprehend the notice" – which defendant failed to establish

---

[7]     Defendants do not concede that each alleged statutory violation entitles Plaintiffs to multiple awards of statutory liquidated damages. That is an issue that may be impacted by the Illinois Supreme Court in the pending *Cothron v. White Castle Sys.* case, No. 128004.

plaintiff had from the pop up on the screen of the time clock. *Id*. at 5. Further, the court remarked that the electronic notice did not identify the entities involved in the collection and instead included "empty spaces where the entity's name should be." *Id*. With respect to the employee handbook, the court questioned whether acknowledging receipt of a handbook, which happened to contain a biometric policy among many others, constituted informed written consent to the biometric policy and found the handbook acknowledgment did not amount to a written release. *Id*.

Plaintiffs' consents suffer from none of these deficiencies. Here, Plaintiffs were specifically informed, in writing, that their fingerprints would be collected "as biometric authentication of [their] identity as part of the automatic screening process" and executed the Consent Agreements in the presence of medical staff members expressly acknowledging that they "underst[ood] and [agreed]" to "provide [their] fingerprint as biometric authentication." Mot. Ex. A ¶ 16. Their consents further acknowledged that they "had a chance to discuss and ask questions about[] this Consent Agreement" and "agree[d] to participate in Grifols' automated plasmapheresis program under and pursuant to the terms and conditions contained [in the Agreement]." *Id*. ¶ 23. Unlike the disclosures in *Christmas*, which were made on a screen with blanks where key information should have been, the disclosures made here were clear and complete and Plaintiffs had a full opportunity to review and ask any questions as they acknowledged in signing the consents. Their written consent is an unequivocal consent to the collection of their biometrics – not simply an acknowledgment of having received a copy of a handbook.

Indeed, the context for Plaintiffs' consents is unique and easily distinguishable from the cases Plaintiffs cite, which all involve a consent in the context of employment. *See* Opp. at 10

(referencing consents in employee handbooks and onboarding slides).[8] Here, Plaintiffs consented to the collection of their biometric data in the context of undergoing a significant medical procedure that involves meaningful risks, including of hospitalization in the event of severe complications and conceivably, the risk of stroke or death. Opp., Ex. A ¶ 7. Given the nature of the procedure, Defendants took precautions to ensure that donors had sufficient opportunity to review the agreement and that their consent was fully informed. *See* Mot. Exhibit A. Plaintiffs' signed consents are not routine acknowledgements of having received a copy of a handbook containing dozens of company policies, or a slide deck or pop-up screen presented on the first day of work along with every other piece of onboarding paperwork,[9] but formal, signed acknowledgments of, and agreements to, the terms and conditions described – including to the collection of biometrics. Plaintiffs fail to state a claim against Biomat or TPR for any alleged violation of Section 15(b) as a result.

### III. PLAINTIFFS CANNOT REFUTE THAT THE ALLEGED BIOMETRIC IDENTIFIERS COLLECTED ARE EXEMPT UNDER THE BIPA'S HEALTH CARE EXCEPTION

Plaintiffs also fail to refute that the alleged biometric identifiers at issue are exempt from the BIPA's requirements. As explained in Defendants' motion, biometric identifiers, and thus biometric information, fall outside the BIPA's scope if they are "(1) . . . obtained from a patient in a health care setting; or (2) . . . collected, used, or stored in connection with healthcare

---

[8]    Plaintiffs' reliance on *Fleury v. Union Pac. R.R. Co.*, 528 F. Supp. 3d 885, 896 (N.D. Ill. 2021), and *Bradenberg v. Meridian Senior Living, LLC*, 564 F. Supp. 3d 627, 635 (C.D. Ill. 2021), is entirely misplaced as *Fluery* addressed an unrelated question of whether a consent signed after the lawsuit was filed could incorporate an earlier *unwritten* agreement to knowingly provide biometric information and *Bradenberg* did not involve a written consent at all.

[9]    While Defendants' disclosure and consent are undoubtedly more robust than in the cases Plaintiffs cite, Defendants do not contend that disclosures contained in handbooks or presented electronically or in other forms cannot meet the requirements of the BIPA.

treatment[.]"[10] *Vo v. VSP Retail Dev. Holding, Inc.*, 2020 U.S. Dist. LEXIS 53916, at *4 (N.D. Ill. March 25, 2020). Plaintiffs' claims are barred under both scenarios.

A. Plaintiffs cannot refute that their claims fall under BIPA's exception for information collected from a patient in a health care setting.

Plaintiffs argue that the alleged biometric identifiers and information are not exempt under the BIPA's exception for information collected from a patient in a health care setting because Defendants are not healthcare providers. Opp. at 10-11. But Defendants have never claimed to be healthcare providers, and the exception does not require that they be. To the contrary, the BIPA exempts information obtained from a *patient in a health care setting*. If the legislature had intended the exceptions to apply exclusively to *health care providers*, it would have stated as much. Instead, it chose the language cited above, which exempts the alleged biometric information and identifiers Plaintiffs claim were collected here. *See* Mot. at 10, 12-13.

*Marsh v. CSL Plasma Inc.*, 503 F. Supp. 3d 677 (N.D. Ill. 2020), which Plaintiffs cite, does not change the result. As explained in Defendants' motion, the *Marsh* court's conclusion that "a person who sells plasma to CSL is not a 'patient' in a 'healthcare setting'" was premised on the notion that "the only thing that CSL is providing to the seller is money," and seemingly also in reaction to the defendant's claim that a "patient" can be anyone who is "acted upon." *Id.* at 683-84; Mot. at 13. Here, Defendants conducted medical screenings and health evaluations, performed tests and, where appropriate, provided donors with necessary care. Donors are not simply handed a check, as the court in *Marsh* believed, but instead undergo medical evaluation and testing for their benefit.

---

[10]     Defendants do not contend that they are covered entities under HIPAA or that the alleged biometric identifiers at issue were "collected, used or stored" for "operations under HIPAA." Rather, Defendants contend that the alleged biometric identifiers and information here are excluded from the BIPA's scope based on the two exceptions cited above.

Plaintiffs' argument that they are not "patients" is equally misguided. Plasma donors like Plaintiffs undergo a health evaluation and a highly regulated medical procedure. Through the process, Plaintiffs receive critical information about their health and additional care as needed to ensure their health and safety. *See* Mot. at 11-12. Plaintiffs' compensation and effort to mischaracterize their donations as plasma "sale[s],"[11] do not make the exception any less applicable. Further, even a customer can be a "patient" for purposes of the exception. *See Vo*, 2020 U.S. Dist. LEXIS 53916, at *6 (customer using "virtual try-on software" for corrective lenses was a patient in a health care setting under the BIPA).[12]

Plaintiffs' attempt to distinguish *Vo* on the basis that Plaintiffs here were "not getting corrections to their blood" is unpersuasive. Opp. at 12. Nowhere does the law state that to be a patient requires a "correction" to some physical attribute. Indeed, the plaintiff in *Vo* received no such correction. To the contrary, she "never requested an eye exam, never received an eye exam, never provided Defendant with a prescription for corrective lenses, never received any such prescription, and never requested or received any sort of medical treatment or advice." *Vo*, 2020 U.S. Dist. LEXIS 53916 at *6. Further, the court held that "even if [plaintiff] did not proceed past the Virtual Try-On software to the eye exam and prescription stage, *the initial evaluation of a prospective patient* still constitutes a health care service." *Id*. (emphasis added). This holding affirmatively demonstrates why any claim that a plaintiff must receive some "correction" to be a patient in a health care setting, as Plaintiffs contend, is illogical and incorrect. Ultimately, *Vo* is distinguishable only to the extent that the application of the health care exception is even *more*

---

[11] Defendants compensate donors for their time. They do not purchase donors' plasma.
[12] *Kaufmann v. Schroeder*, 241 Ill. 2d 194, 197 (2011), which Plaintiffs cite in support of their argument (Opp. at 12), concerned whether a sexual assault by a doctor arose out of "patient care" and has no bearing on whether Plaintiffs here constitute patients under the BIPA's exception.

*apparent* here, where Plaintiffs did more than simply browse an eyeglass website and actually underwent a medical evaluation and procedure in a health care setting.[13]

B. Plaintiffs cannot refute that their claims fall under BIPA's exemption for information collected for health care treatment.

Plaintiffs' attempt to hurdle the exemption for "information collected, used or stored for health care treatment" is equally unsuccessful. *See* Opp. at 13-17. The crux of Plaintiffs' argument is that Defendants do not *provide* health care treatment. Opp. at 14. Plaintiffs' argument misreads the statute. The BIPA does not exempt only alleged biometric identifiers used in providing health care treatment. Instead, as Plaintiffs acknowledge later in their Opposition, the statute more broadly excludes from its purview, biometric identifiers collected, used, or stored in *connection* with health care treatment. *See* Opp. at 15. Here, there is no dispute that Plaintiffs' alleged biometric identifiers, and thus biometric information, were collected and used to authenticate donors' identities *in connection with* ensuring the integrity of the donated plasma and the safety of manufacturing health care treatments for those in need. *See* Mot. at 15.

Plaintiffs' argument that the legislature could have used broader wording if it had intended to have a broader effect is circular. *See* Opp. at 16-17. The language of the exemption reflects the legislature's intent, which was to exempt, among others, biometric identifiers "collected, used, or stored for health care treatment." 740 ILCS 14/10. It did not, as Plaintiffs acknowledge, exempt all "health care facilities" or "healthcare providers," and Defendants do not suggest otherwise.

---

[13]  Plaintiffs offer a final, convoluted argument that *Vo*'s analysis of the "HIPAA exemption," which Plaintiffs acknowledge is not at issue in this case, provides another basis for denying Defendants' motion to dismiss. Opp. at 13. Plaintiffs' argument is a non-sequitur as both parties agree that Defendants are not covered entities under HIPAA, and Defendants do not rely on the BIPA's exemption of "operations under [HIPAA]." *See* 740 ILCS 14/10 (exempting "information collected, used, or stored for health care . . . operations [under HIPAA]"). The legislature created separate exceptions relating to health care, meaning that HIPAA's statutory definitions have no bearing on Defendants' arguments that the alleged biometric identifiers and information here are excluded from the BIPA's scope based on the *other* two exceptions cited above.

Instead, the BIPA exempts biometrics collected for health care treatment – regardless of setting or whether they were collected by a "healthcare provider." The alleged biometric identifiers at issue in this case fall within the plain language of the exemption as articulated by the legislature.

Plaintiffs' further argument that BIPA claims are routinely allowed in the health-care industry is unconvincing. Notably, the cases to which Plaintiffs cite all involve claims brought by *employees*, arguing, in effect, that their alleged biometric identifiers were not collected for health care treatment by virtue of their jobs in a health care setting. *See* Opp. at 15-16; *see*, *e.g.*, *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 844 (N.D. Ill. 2021) (analyzing whether the exemption "applies to health care workers' biometric information"). The courts' skepticism in those cases that the legislature did not intend to create a blanket exemption for health care *employees* has no bearing on the applicability of the exemption here. Unlike an employee at a health care facility whose biometrics were collected for their job duties, and in some cases for timekeeping purposes,[14] Plaintiffs' alleged biometric identifiers and information were collected in anticipation of their own medical procedures.

As explained in Defendants' Motion, the exception for biometric identifiers collected from patients in a health care setting and biometric identifiers collected in connection with health care treatment together evidence a clear intent *not* to exempt all health care professionals, but rather, to avoid infringing on the provision of important health care treatments or otherwise compromise the ability to verify individuals' identities in that setting. Plaintiffs' stated fear that exempting Plaintiffs here will effectively "grant a sweeping, categorical exemption to a particular industry," Opp. at 16, is a red herring.

---

[14]     *See*, *e.g.*, *Peaks-Smith vs. St. Anthony Hospital*, 2018 CH 2077, Opp. Ex. E.

IV.    **PLAINTIFFS CANNOT REFUTE THAT THE ALLEGED BIOMETRIC IDENTIFIERS AND INFORMATION ARE USED TO VALIDATE SCIENTIFIC TESTING OR SCREENING**

Finally, the alleged biometric identifiers and information at issue plainly fall under the BIPA's exemption for "image[s] used to . . . validate scientific testing or screening." 740 ILCS 14/10. Indeed, it is difficult to envision how the exception could *not* apply when the very purpose of the finger-scan is to initiate the process of screening donors for the absence of disease or infection that would make them ineligible. Plaintiffs' only response is an extended discussion of statutory construction and *noscuitur a sociis,* none of which refutes the applicability of the exemption. Specifically, Plaintiffs contend that there are two definitions of "screen," only one of which of which applies, which is that screening is "to test or examine for the presence of something (such as a disease)." Opp. at 18. From that, and in the context of the statute, Plaintiffs conclude that "screen" can only mean to "locate and diagnose diseases," and therefore the exemption does not apply here. *Id*. The other definition Plaintiffs offer is "to make a separation into different groups," which Plaintiff concludes could not possibly apply here in the context of the exemption. *Id*.

Plaintiffs' argument is wrong. As an initial matter, "screening" has numerous and more nuanced definitions that make sense in the context of the exemption including, for instance, "to test or check (an individual or group) so as to determine suitability for a task, etc."[15] or "tests or examinations to discover if there is anything wrong with something."[16]  The screening process here falls within both, as well as within Plaintiffs' narrow definition of "testing for the presence of something." Defendants use finger-scan verifications and allegedly collect biometric identifiers

---

[15]    Collins Dictionary, https://www.collinsdictionary.com/us/dictionary/english/screen
[16]    Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/screening

and information in order to identify and screen donors to confirm that they meet eligibility requirements for plasmapheresis including, among other things, that they are in "good health and free from transfusion-transmitted infections." *See* 21 CFR 630.10. Here, biometric data is used to "screen" in the sense that it is used as part of the process to determine donors' suitability, and also to assess the presence, based on the donors' records, of disease or infection. Regardless of which dictionary definition one adopts, the screening process here is not simply about "separating into different groups," as Plaintiffs would have the Court believe, but a process of evaluating donors in a health care context, ensuring the absence of disease, and ascertaining their eligibility to donate plasma. As such, any alleged biometric identifiers or information collected as part of that screening process are exempt under the plain language of the statute.

## V. PLAINTIFFS FAIL TO REFUTE THAT THEIR CLAIMS ARE UNTIMELY

Plaintiffs' argument that the timeliness of their claims cannot be resolved at the pleadings stage ignores the law and misstates the BIPA. "[I]f it is plain from the complaint that the defense is indeed a bar to the suit dismissal is proper without further pleading." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010); *see also Parangao v. Community Health Syst., Inc.,* 858 F.3d 452, 457 (7th Cir. 2017).

In this case, it is clear from the dates of Plaintiffs' donations, as alleged in their Second Amended Complaint, that certain of their claims are time-barred. *See* Mot. at 17; SAC ¶¶ 6, 29-32. Plaintiffs' single-sentence assertion that timeliness will turn on "when they stopped donating and when their data was deleted" is not supported by any authority and should be disregarded. *See Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) ("'skeletal' arguments may be properly treated as waived").

A. Vaughan and Darnell's Claims Are Time-Barred by the One-Year Statute of Limitations Set Forth in 735 ILCS 5/13-201.

Plaintiffs argue that a one-year statute of limitations cannot apply because Section 13-201 applies only to privacy torts involving publication and they do not allege a publication. Opp. at 21. This is the precise issue that the Illinois Supreme Court is currently considering in *Tims v. Black Horse Carriers, Inc.*, Case No. 127801. As explained in Defendants' Motion, Defendants maintain that because the BIPA inarguably concerns the right to privacy, a one-year statute of limitations applies to each of the BIPA's subsections, as it does to countless other privacy claims. *See* Mot. at 20-21. Furthermore, BIPA claims, including those alleged here, are inherently predicated on preventing unauthorized publication. As the Supreme Court explained in *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, the BIPA was designed to "protect[] a secrecy interest – here, the right of an individual to keep his or her personal identifying information like fingerprints secret." 2021 IL 125978, ¶ 46. That certain subsections may not have a specific "publication" element, does not change the fact that the BIPA is a privacy statute passed for the purpose of "prevent[ing] an unauthorized disclosure" of biometric information. *Sekura v. Krishna Schaumburg Tan, Inc.*, 2018 IL App (1st) 180175, ¶ 70. As such, Defendants contend, and expect the Illinois Supreme Court will soon find, that claims brought under the BIPA, regardless of the subsection, are properly governed by the one-year limitations period set forth in 735 ILCS 5/13-201, which has already been found to apply to claims brought under sections 15(c) and (d) of the BIPA. *See Tims v. Blackhorse Carriers*, 2021 IL App (1st) 200563, ¶ 35.

Furthermore, Plaintiffs' own allegations refer to publication. Indeed, Plaintiffs state explicitly that they "bring this action . . . for invading their privacy by unlawfully . . . disseminating their biometric data" and claim that Defendants failed to inform them that their alleged biometric information was disclosed to a third party. Opp. at 1, 8-9. Whether pled as a separate claim or not,

concerns over the "serious and irreversible privacy risks" that come with publication and the "expo[sure]" of biometric identifiers and information are at the heart of Plaintiffs' claims. *See* SAC ¶¶ 16-19 (describing concerns over hacks and unauthorized disclosures to third parties). Even accepting as true Plaintiffs' argument that the one-year statute of limitations set forth in Section 13-201 only applies to privacy claims involving publication, Section 13-201 applies to and bars Vaughan and Darnell's claims.

    B.   <u>Vaughan's Claims Are Alternatively Barred by the Two-Year Statute of Limitations Set Forth in 735 ILCS 5/13-202.</u>

       Plaintiffs are also incorrect in their assertion that the two-year statute of limitations in 735 ILCS 5/13-202 cannot apply. To the extent Plaintiffs suffered any harm, which Defendants vehemently dispute, Plaintiffs' injuries must be emotional in character, stemming from concerns over the risk of exposure of their alleged biometric information. Emotional injuries are "a species of personal injury" and governed by Section 13-202. *Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 744 (1st Dist. 2001); *see also Gakuba v. Schafer*, 2015 IL App (2d) 141157-U, ¶ 10 (finding "no dispute" that the limitations period for an intentional infliction of emotional distress claim is two years); *Arnold v. Janssen Pharmaceutica*, 215 F. Supp. 2d 951, 960 (N.D. Ill. 2002) (Gottschall, J.) ("The statute of limitations for [plaintiff's] intentional infliction of emotional distress ('IIED') and related negligence claims is two years"). Plaintiffs' authority does not hold otherwise. *See People ex rel. Ill. DOL v. Tri State Tours, Inc.*, 342 Ill. App. 3d 842, 848 (2003) (acknowledging that Section 13-202 applies to mental injuries).

       Thus, in the event the Court finds that the one-year limitations period for privacy injuries does not apply, Plaintiffs' claims are governed by Section 13-202's two-year limitations period, making Vaughan's claims untimely and subject to dismissal.

## VI.   PLAINTIFFS' OPPOSITION FAILS TO IDENTIFY ANY SUPPORT FOR THEIR CONCLUSORY ALLEGATION THAT DEFENDANTS RECKLESSLY OR WILLFULLY VIOLATED THE BIPA

Finally, Plaintiffs' Opposition fails to justify their plainly unsupported allegations that Defendants' alleged conduct was reckless or willful. Instead, Plaintiffs take the position that they are simply not required to plead facts in support of their prayer for relief. Plaintiffs' argument is wrong and inconsistent with the standards set forth in *Iqbal* and *Twombly* requiring more than mere conclusory statements and "sufficient detail to give defendants fair notice" of the claims against them. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). As the Seventh Circuit further explained, while "[s]tates of mind may be pleaded generally . . . a plaintiff still must point to details sufficient to render a claim plausible." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013).

Here, Plaintiffs allege no facts to suggest that Defendants acted willfully or recklessly such that they should be permitted to pursue the relief requested. In the absence of any supporting allegations, their claims of reckless and willful conduct—and their attempt to increase their statutory damages *fivefold* on that basis—should be dismissed or stricken, as courts have done in numerous other cases in which plaintiffs have similarly attempted to lay the groundwork for enhanced statutory damages without alleging any factual support. *See*, *e.g.*, *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (dismissing plaintiff's claims for recklessness where plaintiff failed to allege any "substantive details regarding whether the allegations were reckless"); Mot. at 16-17 (citing additional cases dismissing plaintiffs' allegations on these grounds).

Finally, Plaintiffs' alternative argument that if they are required to plead recklessness or willfulness (which indeed they are), they have done so by alleging that Defendant violated the

BIPA more than a decade after it was passed is without merit. Opp. at 24. This would lead to the absurd result that every violation of the BIPA, by any party, from now until the end of time, is by definition "reckless." The mere passage of time since the enactment of a statute will not support a claim of recklessness which, "in general terms . . . denotes a course of action which shows an utter indifference to or a conscious disregard." *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 618 (N.D. Ill. 2019) (Aspen, J.) (internal citations omitted). Indeed, Plaintiffs' argument "does nothing to distinguish this case from every possible BIPA case where the defendant is alleged to have failed to meet the strictures of Section 15." *Id*. at 619. As this Court previously found, where, as here, "the only . . . substantive allegations are that [defendants] violated BIPA," a plaintiff's conclusory statement that that violation was reckless is insufficient to state a claim for a reckless or willful violation. *Id*. (granting defendant's motion to dismiss with respect to plaintiff's allegations that defendant's actions were intentional and reckless).

## <u>CONCLUSION</u>

For the reasons discussed above and in Defendants' Motion to Dismiss, Plaintiffs cannot state a claim upon which relief can be granted, and the Court should dismiss the Second Amended Complaint with prejudice.

Dated: August 5, 2022        Respectfully submitted,

                                    BIOMAT USA, INC., TALECRIS PLASMA RESOURCES, INC., and INTERSTATE BLOOD BANK, INC.

                                By:     /s/ Jason A. Selvey
                                           One of Their Attorneys

Jason A. Selvey
Julia S. Wolf
Jackson Lewis P.C.
150 North Michigan Ave., Suite 2500

Chicago, IL 60601
Tel.: 312.787.4949
Jason.Selvey@jacksonlewis.com
Julia.Wolf@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

I, Jason Selvey, an attorney, certify that on August 5, 2022, I caused a true and correct copy of the attached *Defendants' Reply in Support of Their Motion to Dismiss Plaintiffs' Second Amended Complaint* to be served on the following counsel of record by filing with the Court's CM/ECF filing system:

David A. Fish
Mara Baltabols
Fish Potter Bolaños, P.C.
200 East Fifth Avenue, Suite 123
Naperville, Illinois 60563
(630) 355-7590
dfish@fishlawfirm.com
mara@fishlawfirm.com

/s/ Jason Selvey