IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRIAN VAUGHAN, JASON DARNELL, FEBBIE MINNIEFIELD, and ADRIEL VEGA, individually and on behalf of others similarly situated, | Case No. 20-cv-04241 |
| Plaintiffs, | Honorable Marvin Aspen |
| v. | Magistrate Judge Cole |
| BIOMAT USA, INC., TALECRIS PLASMA RESOURCES, INC., and INTERSTATE BLOOD BANK, INC., | |
| Defendants. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR AND MEMORANDUM IN SUPPORT OF
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

David Fish
**FISH POTTER BOLAÑOS, P.C.**
111 East Wacker Drive, Suite 2300
Chicago IL 60601

Mara Baltabols
**FISH POTTER BOLAÑOS, P.C.**
200 E. 5th Ave., Suite 115
Naperville, IL  60563

*Attorneys for Plaintiffs and
Others Similarly Situated*

I.  **Introduction**

Plaintiffs brought this putative class action against Biomat USA, Inc., Talecris Plasma Resources, Inc. and Interstate Blood Bank, Inc. (collectively, "Defendants") under the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, et seq. In their Second Amended Complaint, Plaintiffs alleged that Defendants violated the BIPA by collecting their and other Illinois blood plasma donors' fingerprints through its finger-scanning donor identification system without providing them with the requisite disclosures or obtaining informed written consent.

Defendants have agreed to pay $16,750,000 into a non-reversionary Settlement Fund to be distributed to the 66,822 Settlement Class of Illinois blood plasma donors. This is a very favorable result for the Plaintiffs. Settlement Class Participants will receive, after payment of all proposed expenses and attorney's fees, between $550 per person (assuming a ~ 30% claims rate) and $1,100 (assuming a ~ 15% claims rate).

By this Motion, the Parties request permission to send notice to putative Class Members to notify them of the Settlement and see if anyone objects or wishes to exclude themselves from participating in the Settlement. The Parties also request that the Court set a Final Approval Hearing to rule on any objections to the Settlement and to determine whether it should be finally approved. Plaintiffs respectfully request that the Court grant this motion for preliminary approval, certify the proposed Settlement Class, appoint Plaintiffs' attorneys as Class Counsel, direct that the proposed Notice be disseminated to the Settlement Class, and set a Final Approval Hearing.

II.  **Plaintiffs' Allegations and Defendants' Defenses**

As alleged in the Second Amended Complaint, Plaintiffs donated plasma at one of Defendants' Illinois-based plasma donation centers. They were required to scan at least one fingerprint to donate plasma to track their identity. Plaintiffs allege that Defendants failed to comply with the BIPA's requirements when they collected their fingerprint data. Specifically, they allege

that Defendants violated the BIPA by (i) failing to develop a publicly data-retention policy and guidelines for permanently destroying biometric data, and (b) collecting, using, and storing their donors' biometric data without obtaining informed written consent. Defendants, for their part, deny Plaintiffs' allegations, that they have violated the BIPA, they are subject to the BIPA, or that any biometric data of donors were disclosed to any unauthorized third parties.

## III. Risks of Litigation

Significantly, here, Defendants had many defenses available:

*First*, Class Members signed a form stating: "*I understand and agree that I will provide my fingerprint as biometric authentication of my identity as part of the automated screening process*". While Plaintiffs argued this disclosure was not BIPA compliant, it represented a risk and one that Defendant argued meant the claims were entirely barred.

*Second*, this settlement was negotiated shortly before the Illinois Supreme Court definitely held that a 5 year statute of limitations (as opposed to a 1 year) applies. *Tims v. Black Horse Carriers, Inc.,* 2023 IL 127801 (February 23, 2023). Had the Court ruled that a one-year statute of limitations applied, most Settlement Class Members would have been barred from any recovery.

*Third*, while the Plaintiffs achieved what they perceived as a favorable ruling on the motion to dismiss, had Defendants ultimately prevailed on any of their defenses (or defeated class certification), the Settlement Class Members could lose their case and collect nothing. For instance, no appellate court has ruled on the unique plasma-center defenses (such as, for example, federal preemption and whether they were collecting for healthcare purposes).

*Fourth*, last month, the Illinois Supreme Court agreed to hear *Mosby v. Ingalls Memorial Hospital, et al*. At issue in *Mosby* is the scope of the so-called HIPPA and healthcare exemptions in BIPA that the Defendants here relied upon to seek dismissal. [ECF #54] Plaintiffs provided the Appellate Court's *Mosby* decision as Supplemental Authority in the briefing on the Motion to

2

Dismiss [ECF #64] and this Court cited it in denying the Motion to Dismiss. [ECF #88] An adverse decision by the Supreme Court could impact the outcome of this case.

While Plaintiffs felt confident in their responses to these and the other arguments Defendants would inevitably make, with the lack of precedential authority, the outcome was less than certain.

**IV.     Procedural History**
(Ex. 1, Settlement Agreement, Recitals)

On June 10, 2020, Plaintiff Vaughan filed a putative class action complaint in the Circuit Court of Cook County alleging violations of the BIPA. On July 17, 2020, Defendants Biomat and TPR removed the case to the Northern District of Illinois, pursuant to the Class Action Fairness Act ("CAFA"). On October 23, 2020, on Defendants Biomat and TPR's motion, the Court stayed all proceedings pending the Appellate Court of Illinois' decision in *Tims v. Black Horse Carriers, Inc.,* Case No. 1-20-0563 (1st Dist.). (*See* dkt. 26.) After the stay was lifted, on December 17, 2021, Defendants moved to dismiss the Amended Complaint. (*See* dkt. 53-54.) The Court granted Defendants' Motion on April 28, 2022, and granted Plaintiffs leave to amend. (*See* dkt. 69-70.) They then filed the operative Second Amended Complaint on May 16, 2022. (*See* dkt. 72.) Defendants moved to dismiss on July 8, 2022. (*See* dkt. 79-80.) On September 19, 2022, the Court entered a Memorandum Opinion denying the Defendants' Motion to Dismiss. (*See* dkt. 88.) Thereafter the Parties engaged in discovery. Defendants denied and continue to deny all liability.

**V.     Summary of Settlement Terms**

   **A.     The Proposed Settlement Class**
   (Ex. 1, Settlement Agreement, § 1.26)

The Plaintiffs seek preliminary approval of the following Settlement Class:

All individuals who had their Biometric Identifiers and/or Biometric Information collected, captured, stored, possessed, received, transmitted, converted or otherwise obtained by either (i) Biomat USA, Inc. or Talecris Plasma Resources, Inc. at one of their plasma donation centers in Illinois as part of their plasma donation processes between June 10, 2015 and June 10, 2022, or (ii) Interstate Blood Bank, Inc. at its plasma donation center in Illinois as part

of their plasma donation process between April 8, 2016 and July 25, 2022; and whose name appears on the Class List ("Settlement Class")

**B. Settlement Fund; Allocation of the Fund; Payments to Class Members; Non-Monetary Relief**
(Ex. 1, Settlement Agreement, § 1.28)

While denying all liability and wrongdoing Defendants will pay a gross Settlement Fund of $16,750,000 to resolve the claims in this case on a class action basis. The "Gross Fund" is the maximum amount that Defendants shall pay under this Settlement, unless the number of the Settlement Class Members increases by more than 500 people.

The "Net Fund" is the gross Settlement Fund minus the following deductions, which are subject to Court approval: Settlement Class Counsel's attorney fees and costs; the Settlement Administrator's Expenses; the Plaintiffs' Incentive Awards and any other payments made associated with the settlement. Payments will be made from the Net Fund pro rata for each Class Member that timely returns a valid claim ("Class Participants"). This Settlement has a claims-made structure with no reversion, so the full Settlement Fund will be distributed to Class Members who submit valid and timely claims forms; no money will be returned to the Defendants.

The number of claims submitted will affect the per-person payment, with a lower claims rate resulting in a higher per-person payment. Settlement Class Counsel estimate that Settlement Class Participants will receive, after payment of all proposed expenses and attorneys' fees, between $550 per person (assuming a 30% claims rate) and $1,100 (assuming a 15% claims rate).[1]

**C. Uncashed Checks Will Be Distributed to a Cy Pres Recipient**
(Ex. 1, Agreement, § 2.1(h))

---

[1] Although hard to predict, Plaintiffs anticipate a claims rate of between 15% and 30% based upon experience in settling similar BIPA cases against other plasma donation centers. The median claims rate in class settlements is approximately 9%. *See* Federal Trade Commission, Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns, p. 11 (Sept. 2019), available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf (median claims rate for settlements studied was 9%).

Settlement Class Participants will have 150 days to cash their settlement payments. Funds from checks not cashed by the deadline will be distributed to the Northern Illinois Food Bank as the *cy pres* recipient. However, Plaintiffs expect few uncashed checks because Settlement Class Participants must first submit a claim form to receive payment and can elect to receive electronic payment, which obviates the need to cash a check.

**D.  Defendant's Representations of Compliance with the BIPA**
    (Ex. 1, Settlement Agreement, § 2.2)

As part of the Settlement, Defendants represent that they now comply are in compliance with the BIPA on a going forward basis to the extent they utilize finger scanning.   After Plaintiffs filed this lawsuit, the Defendants added a "Donor Biometric Data Privacy Policy" that is available online. https://www.grifolsplasma.com/en/privacy-policy

**E.  Release of Claims**
    (Ex. 1, Settlement Agreement, §§ 1.20, 1.21, 3.1)

Settlement Class Members who do not exclude themselves will release the Released Parties from claims relating in any way to or connected with the alleged capture, collection, storage, possession, transmission, conversion, purchase, receipt through trade, obtaining, sale, lease, profiting from, disclosure, redisclosure, dissemination, transmittal, conversion and/or other use of biometric identifiers and/or biometric information as detailed in the Settlement Agreement.

**F.  Notice of Class Action Settlement and Claim Form**
    (Ex. 1, Settlement Agreement, §§ 1.5, 1.16, 4.1 and Ex. A)

Among other things, Plaintiffs' proposed Notice of Class Action Settlement ("Notice") explains the following to Settlement Class Members: (1) what the Settlement is about; (2) how to request payment, exclusion, or submit an objection; (3) how to obtain more information about the Settlement; (4) the monetary terms of the Settlement and how individual payments will be calculated; (5) the maximum amounts to be requested for attorney fees, costs, settlement

administration, and Incentive Awards; and (6) the Final Approval Hearing details. The Parties have selected Analytics Consulting, LLC to act as the Settlement Administrator. The Claim Form will be provided with the Notice. The proposed Claim Form is simple and easy to complete. The Claim Form explains how individuals can also return a Claim Form through the Settlement website.

The Settlement website, anticipated to be www.bipaplasma.com, will also have the Notice and Claim Forms, the Settlement Agreement, the Preliminary Approval Order, the Motion for Attorney Fees, Costs, and Settlement Class Representatives' Incentive Awards (once available), the Motion for Final Approval (once available), and the Final Approval Order (once available).

**G.  Distribution of Notice**
    (Ex. 1, Settlement Agreement, § 4.1)

The Settlement Administrator will implement a robust class notice program to ensure that Settlement Class Members learn of their rights in the Settlement. As explained below, the notice program will include a Settlement website and two methods of notice distribution.

First, the Settlement Administrator will provide the Notice and Claim Forms by direct mail to all Class Members, to the extent mailing addresses are available. Before mailing, the Settlement Administrator will update Class Members' addresses by running their names and addresses through the National Change of Address database. The mailing shall include a pre-paid envelope for Class Members to return a Claim Form. For Class Members whose Notices are returned as undeliverable without a forwarding address, the Settlement Administrator shall promptly run a database search to locate an updated address and shall mail the Notice and Claim Form to the updated address. Second, where phone numbers are available for Class Members, the Settlement Administrator shall also send Notice via text message.

**H.  Incentive Awards**
    (Ex. 1, Settlement Agreement, § 8.2)

Under the Settlement Agreement, Class Counsel may request that the Court award the Class Representatives up to $5,000 each as an Incentive Award for their work in prosecuting this lawsuit on behalf of the Settlement Class and recovering money for the Settlement Class.

**I.    Attorney Fees and Costs**
(Ex. 1, Settlement Agreement, § 8.1)

Under the Settlement Agreement, Class Counsel may request that the Court award one-third of the Gross Fund as attorney fees plus their litigation expenses. The Notice will advise Settlement Class Members about the attorney fee request and how to object to it.

**VI.    The Court Should Grant Preliminary Approval**

**A.    Settlement of Class Action Litigation is Favored**

Federal courts favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (collecting cases). The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;
(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by the leading class action treatise, safeguards the due process rights of absent class members and enables the Court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq*. With this motion, Plaintiffs request that the Court take the first step in the process by granting preliminary approval of the proposed Settlement.

7

Rule 23 was amended effective December 1, 2018. Before then, Rule 23 did not address standards for preliminary approval. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 28 (E.D.N.Y. 2019). At the preliminary approval stage, district courts decided whether the proposed settlement fell "within the range of possible approval." *Kou Thao Vang v. KeyTronicEMS*, 2019 WL 337589, at *1 (D. Minn. Jan. 28, 2019); "Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card.,* 330 F.R.D. at 28 (citing Fed. R. Civ. P. 23(e)(1)(B)(i–ii)) (emphasis in original). As shown below, the Settlement satisfies these criteria and preliminary approval is justified.

By way of comparison, settlements in other statutory privacy class actions frequently don't come near this amount, either in terms of raw numbers or percentage of available relief. *See e.g., In re Google LLC Street View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *11–14 (approving, over objections of class members and state attorney general, a settlement providing only *cy pres* relief for violations of a federal privacy statute, where $10,000 in statutory damages were available per claim); *Marshall v. Lifetime Fitness, Inc.*, 2017 CH 14262 (Cir. Ct. Cook Cnty.) (paying a cap of $270 to individuals who filed claims and reverting the remainder to defendant); *Adkins v. Facebook, Inc.,* 18-cv-05982-WHA, dkts. 350, 369 (N.D. Cal. May 6, 2021 and July 13, 2021) (approving settlement for injunctive relief only, in class action arising out of Facebook data breach, and granting $6.5 million in attorneys' fees and costs); *Carroll v. Crème de la Crème, Inc.,* 2017 CH 01624 (Cir. Ct. Cook Cnty. June 25, 2018) (BIPA settlement providing only credit monitoring); *Rosenbach v. Six Flags Ent. Corp.*, 2016 CH 00013 (Cir. Ct. Lake Cnty. May 14, 2021)

8

(preliminarily approving $36 million fund for approximately 1,110,000 class members, and capping class member payments at $200 or $60 depending on date of finger scan).

Even narrowing the comparison to the better BIPA settlements that create non-reversionary funds, this Settlement is favorable. Indeed, the per-person monetary relief achieved here is among the best in a BIPA case of this size—*i.e.*, those with at least tens of thousands of class members. *See Prelipceanu v. Jumio Corp.*, 2018 CH 15883 (Cir. Ct. Cook Cnty. July 21, 2020) ($7 million fund for approximately 260,000 class members); *Miracle-Pond v. Shutterfly*, 2019 CH 07050 (Cir. Ct. Cook Cnty. Sept. 9, 2021) ($6.75 million fund for potentially millions of class members); *Thome v. NOVAtime Tech., Inc.*, No. 19-cv-6256, dkt. 90 (N.D. Ill. Mar. 8, 2021) ($4.1 million fund for 62,000 class members, and assignment of insurance policy); *Figueroa v. Kronos*, 2019-CV-01306 (N.D. Ill. Feb. 10, 2020) ($15.2 million for 171,643 class members).

## B. The Court Will Likely Be Able to Approve the Settlement Under Rule 23(e)(2)

### 1. The Class Representatives and Class Counsel have Adequately Represented the Proposed Settlement Class – Rule 23(e)(2)(A)

Settlement Class Counsel and the Settlement Class Representatives pursued this case vigorously on behalf of the potential class. Class Counsel briefed and defeated Defendants' motions to dismiss, served written discovery requests, obtained relevant documents and served third-party discovery.

### 2. The Settlement Was Negotiated at Arm's Length – Rule 23(e)(2)(B)

The Settlement was the result of extensive arm's-length negotiation between counsel during a months-long process.

### 3. The Settlement Provides Adequate Relief to the Class – Rule 23(e)(2)(C)

The Class Representatives claim that they and potential Class Members are entitled to $1,000 per violation if they are able to prove Defendants' alleged violations of the BIPA were "negligent." 740 ILCS 14/20(1). The $16,750,000.00 Gross Fund represents a gross recovery of more than $250

9

per Settlement Class Member. Depending on the claims rate, Settlement Class Counsel estimates the net recovery for each Class Participant will be between $550 and $1,100. The Settlement represents a meaningful recovery when compared against average recoveries in class action settlements. *See In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted). The Court should further evaluate the adequacy of relief based on the sub-factors below, Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv), each of which the Settlement satisfies.

### a. Costs, risks, and delay of trial and appeal.

If the litigation had continued, it would have been complex, expensive, and protracted. If the case had not settled, the Parties would have completed depositions and likely diligently pursued third-party discovery. After that, Plaintiffs would have served an expert witness report about how Defendant's system collected biometric identifiers and/or biometric information covered by BIPA. This likely would have resulted in Defendant hiring its own expert witness. Following that additional discovery, Plaintiffs would have filed a motion for class certification. After extensive litigation, Defendant could have obtained a victory or greatly reduced the potential class recovery based on its defenses in the lawsuit, including:

(1) That the BIPA excludes fingerprint information collected in a plasma-donation facility under the healthcare setting exemption;
(2) that Defendant's biometric device did not collect biometric identifiers or biometric information as defined by the BIPA;
(3) that Defendant's alleged violations of the BIPA were not negligent or reckless; and
(4) that any award of liquidated damages per class member would excessive in light of the alleged absence of injury and thus the damages would violate Defendant's due process rights under the Illinois and/or United States Constitutions.

Instead of expensive, complicated, and protracted litigation, this Settlement provides significant monetary relief to Class Members now.

### b. Effectiveness of the proposed method of distributing relief to Class Members.

The next sub-factor evaluates whether the settlement's proposed method of distributing relief to the class is effective. Fed. R. Civ. P. 23(e)(2)(C)(ii). An effective distribution method "get[s] as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible" while also ensuring that only "legitimate claims" are paid. 4 NEWBERG ON CLASS ACTIONS § 13:53 (5th ed.). Courts have held that requiring a claimant to fill out a short and simple claim form is an appropriate way to balance these concerns, especially in settlements with non-reversionary funds. *See In re Toyota Motor Corp. Unintended Acceleration Mktg. Litig.*, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) ("The requirement that class members download a claim form or request in writing a claim form, complete the form, and mail it back to the settlement administrator is not onerous."). The proposed Settlement here satisfies this factor by relying on well-established, effective methods for processing Class Members' Claim Forms and distributing the proceeds of the Settlement. The Settlement Fund will be distributed to Class Members who submit a short and simple Approved Claim Form, by mail or online, to the Settlement Administrator—an independent third party with extensive experience handling the administration of settlement funds. Each person in the Settlement Class will be sent a paper Claim Form in the mail, attached to the direct notice, and will have the option to alternatively file their claim online through the Settlement Website. The Settlement Administrator will provide Class Members with resources (including a website, mailing address, and toll-free phone number) to contact the Settlement Administrator or Class Counsel directly, review and process the Claim Forms, and then disperse to Class Members their pro rata share of the Settlement Fund upon approval of the Court. This distribution method is effective and supports approval.

### c. The terms of the proposed attorney fee award, including timing of payment

Class Counsel will seek an award of attorney fees of one-third of the Gross Fund plus litigation costs. (Ex. 1, § 8.1.) The Settlement provides for payment of any attorney fees awarded at the same time as payments to Class Members; there is no priority for Class Counsel. *Id.*

### d. Any Agreement required to be identified under Rule 23(e)(3)d

The Settlement Agreement is Exhibit 1 to this Motion. There are no side agreements regarding the Settlement Class or attorney fees related to this Settlement.

### 4. The Settlement Treats Settlement Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)

The Settlement treats Class Members equally by distributing awards to Class Participants from the Net Fund on a *pro rata* basis. Ex. 1, § 1.27.

## C. The Court Will Likely Be Able to Certify the Settlement Class for Purposes of Judgment on the Settlement – Rule 23(e)(1)(B)(ii)

### 1. Certification Will Be Appropriate Under Rule 23(a)

To obtain class certification, Plaintiffs must demonstrate that their claims meet the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). As shown below, all of the elements of Rule 23(a) and (b)(3) are met here.

#### i. Numerosity

Courts consistently hold that if there are more than 40 class members, numerosity is satisfied. *See, e.g., Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). The estimated class size here is 66,822 which satisfies numerosity.

#### ii. Commonality

For a class to be certified, questions of law or fact must exist common to the class. Fed. R. Civ. P. 23(a)(2). Those common issues must be susceptible to common answers. In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court summarized the Rule 23(a)(2) requirement as follows:

> What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common *answers*

12

> apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

564 U.S. 338, 350 (2011). The claims of Class Members can be resolved in a "single stroke" by answering the following common question: did Defendant collect biometric data of Class Members without following BIPA's notice and consent requirements? Answering this common question resolves the question of liability for all Class Members. Commonality will be met here.

### iii. Typicality

A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citation omitted). The requirement is meant to ensure that the named representative's claims "have the same essential characteristics as the claims of the class at large." *Id.* (quotations and citation omitted)).

The claims of the Class Representatives and Class Members arise from the same conduct: Defendants' use of a finger scan system for its Illinois plasma donors allegedly without following the BIPA's notice and consent requirements. Typicality will be met.

### iv. Adequacy of the Class Representatives

The adequacy of representation component has three elements: (1) the claims of the class representative cannot conflict with the claims of the other class members; (2) the class representative's interest in the litigation outcome must be sufficiently strong to ensure that she is a vigorous advocate for the class; and, (3) counsel for the class representative must be competent, experienced, and able to conduct the litigation with that necessary vigor. *Gammon v. G.C. Servs., L.P.*, 162 F.R.D. 313, 317 (N.D. Ill. 1995).

### v. The Class Representatives have an interest in the litigation and have no conflict with Class Members

The Class Representatives allege the same claims as Settlement Class Members and have no

13

interests antagonistic to them. Thus, the Class Representatives have "a clear stake in a successful outcome – [] damages for [themselves] and the class – that raises no specter of antagonistic interests." *Pierre v. Midland Credit Mgmt., Inc.,* 2017 WL 1427070, at *8-9 (N.D. Ill. Apr. 21, 2017). The Settlement Class Representatives exhibited competence throughout the case, including by answering written discovery in support of the class claims in the case.

### vii. Class Counsel is experienced and qualified

Class Counsel will also fairly and adequately protect the interests of the Class Members. A court considers the following four factors when appointing class counsel: (1) the work counsel has performed in identifying the potential class claims; (2) Class Counsel's experience in handling complex litigation and class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that class counsel will commit to representing the class. Fed. R. Civ. P. 23(g).

Class Counsel are highly experienced class action attorneys and have been appointed class counsel in numerous actions in federal and state courts, including numerous other BIPA class actions. Exhibit 2, Fish Declaration and accompanying Firm Resume. By their actions in this case and relevant experience, Class Counsel are well-positioned to protect the interests of Class Members.

### e. Certification Will Be Appropriate Under Rule 23(b)

Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These prerequisites are satisfied.

### f. Common questions predominate

The Rule 23(b) predominance requirement looks to whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods. v. Windsor,* 521 U.S. 591, 623

14

(1997). "Thus, the Plaintiffs bear the burden of demonstrating 'that the elements of liability are capable of proof at trial through evidence that is common to the class rather than individual to the members.'" *Kernats, et al. v. Comcast Corp.,* Case Nos. 09 C 3368 and 09 C 4305, 2010 WL 4193219, at *7 (N.D. Ill. Oct. 20, 2010). The common question predominating in this case is whether Defendant collected Settlement Class Members' biometric data without following the requirements of the BIPA. The answer to this question determines Defendant's liability under the BIPA for all potential persons in the Settlement Class and therefore predominates over any individual questions.

### g. A class action is a superior mechanism

The superiority inquiry requires a court to compare alternatives to class treatment and determine if any alternative is superior. "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). This is particularly true in actions like this one, where numerous individual claimants each suffer a relatively small harm. "Rule 23(b)(3) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). Here, the alternative to class resolution is thousands of individual lawsuits for small recoveries, plus attorneys' fees and costs.

**D.     Plaintiffs' Notice Program and Class Notice Form Merit Approval (Ex. 1, Settlement Agreement, § 4 and Attach. A)**

The proposed Notice complies with due process and the Federal Rule of Civil Procedure 23. Pursuant to Rule 23(c)(2)(B):

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

15

The proposed Notice exceeds this bare minimum and complies with the requirements of Rule 23(c)(2)(B).

## VII. Conclusion

Because the Settlement makes significant monetary relief available to Settlement Class Members who might have recovered nothing without the Settlement, the Court should grant preliminary approval. The Parties will submit a proposed Preliminary Approval Order.

Dated: February 9, 2023

Respectfully submitted,

**BRIAN R. VAUGHAN, JASON DARNELL, FEBBIE MINNIEFIELD,** and **ADRIEL VEGA**, individually and on behalf of all others similarly situated,

By: /s/ David Fish
*One of Plaintiffs' attorneys*

David Fish
Mara Baltabols
**FISH POTTER BOLAÑOS, P.C.**
200 E. 5th Ave., Suite 115
Naperville, IL 60563
312-861-1800
dfish@fishlawfirm.com
mara@fishlawfirm.com
www.fishlawfirm.com

## CERTIFICATE OF SERVICE

I, David Fish, an attorney, hereby certify that the foregoing was served on all counsel of record through service generated by the Court's e-filing system and via electronic mail on February 9, 2023.

/s/ David Fish

16